Moncure, P.,
delivered the opinion of the court.
The court is of opinion that the contract, which is the subject of controversy in this case, being the exhibit marked “B” in the proceedings mentioned, was made under a mutual mistake of the parties, or else under a mistake of one of the parties, to wit: of llichard V. Gaines, acting for himself and his co-trustee, Thomas Watkins, aud for William J. Watkins, the grantor in the deed of trust for the benefit of his creditors, and by means of a fraud committed by the other party, to wit: by Allen W. Elliott, acting for himself and for Charles H. Henderson; and that instead of rendering a decree in favor of the said trustees for the sum of $240, with interest from the -20th of December 1860, that being the price, $1,200, of the saw mill on that day sold by the said William J. Watkins to the said Henderson & Elliott, after deducting therefrom nine hundred and sixty dollars as the price of timber cut by said William J. Watkins from the land of said Henderson, the said price of the timber being ascertained by estimating the quantity of the land on which the timber was cut at 120 acres, that being the area of the whole plat marked “exhibit C” in the proceedings mentioned, and by charging for the said timber at the rate of eight dollars per acre of the said quantity of land, the circuit court ought to have rendered a decree in favor of the said trustees for the sum of $800, with interest from the 20th of December 1860, that being the said price of the said saw mill, after deducting therefrom four hundred dollars as the pricé *377 •of the said timber, ascertained by estimating the quantity of the land on which the timber was cut at fifty acres, that being about the area of that portion of the said plat which is designated by the letters “ A, B, G, D,” and by charging for the said timber at the said rate of eight dollars per acre of the said quantity of fifty acres.
It appears from the evidence in the record that William J. Watkins purchased the timber of Henderson by the foot, instead of by the acre of the ground from which it was cut, and in fact owed but $279.78 for the said timber. The trustee, Bichard Y. Gaines, had been informed and believed that the amount due therefor was $377, and was willing to allow that sum •as a credit in his attempt to settle the matter with Elliott; but Elliott refused to settle, unless the credit for the timber was ascertained by multiplying the number of acres of the land from which it was cut by •eight dollars per acre. He estimated the quantity of the land at fifty acres, and said that it would not at farthest exceed fifty-five or sixty acres. Gaines had been informed by William J. Watkins that he had stepped off the land, and that the quantity was about fifty acres; and he, and the other parties having the •same interest with him, desiring very much to settle the matter before the death of Henderson, the only solvent one of the two partners, Henderson & Elliott, and who was then in extreme illness, and expected •soon to die, he consented to settle the matter with Elliott, by allowing* credit for the timber at the rate of •eight dollars per acre of the said land, described in the said contract, as “ estimated at fifty acres, be the same more or less.” For the purpose of effecting a settlement of the matter in the lifetime of Henderson, Gaines was willing to give up one or two hundred dol *378 lars of the debt, that being the difference between the amount of the credit to which Henderson was really entitled on account of the timber aforesaid, estimated' by the foot, and the amount of the credit to which he-would be entitled on account of said timber, estimated by the quantity of fifty acres of land at eight dollars-per acre. Accordingly contract B was entered into ;• but in order to secure to Henderson, if he got well, the right to settle the matter by paying the difference between $1,200, the price of the mill, and $877, the supposed amount really due for the timber, a condition to that effect was added to the contract. After the contract was made, and before the land was surveyed, Elliott said to Morton, the administrator of Henderson, that he thought there was upwards of one hundred acres in the bounds of the said land set out in the said contract. The survey was made in April 1861, when it was ascertained that the quantity of land contained within the said bounds was one hundred and twenty acres, making the amount of the' credit claimed, if estimated by the acre, nine hundred and sixty dollars, instead of four hundred dollars. Had the quantity been a few acres more, that is, one hundred and fifty, instead of one hundred and twenty acres, the amount of the credit calculated by the acre would have been precisely equal to the price of the-mill. Such a result as that could never have been in the contemplation of the parties. It certainly was not in the contemplation of Gaines; and it could not honestly have been in the contemplation of Elliott. Gaines was prepared for a result of the survey, which would show the quantity to be a few acres more or less than fifty, such a difference as is authorized by the expression “ more or less.” Evidently the piece of land which was contemplated by William J. Watkins *379 as the piece for the quantity of which he was to he charged at the price of eight dollars per acre, if that mode of ascertaining the amount of the credit should be adopted, was the piece contained within the boundaries A, B, 0, D, on the plat, which piece contains about fifty acres, and is separated from the residue of the land in the plat by the fence on the line 0, D. That is the piece which had no doubt been stepped off by William J. Watkins, who thus ascertained that it contained about fifty acres, and he so informed Mr. Gaines, who supposed it was the same land included in the boundaries designated in the contract. All the timber which had been cut by William J. Watkins from the land of Henderson, with the exception of a few trees only, had been cut on that piece of land, and on that side of the said fence which protected the crop of the said Henderson. There was really very little timber on the land included in the said plat, and on that side of the fence next to the crop; and it could never have been intended by said Watkins, or even by Henderson, that the former should be charged for any timbe“r on that side of the fence except by the foot. Gaines never saw the land until some time after the contract was made, and seems to have lived at a distance from it. Elliott lived only two-and-a-half miles from it, and knew all about it. It was understood by the parties, when they made the said con - tract, that on the next day they would ride over the land; but on the next day Elliott excused himself from taking the ride, because he had no horse, and it being a very cold day, with snow on the ground,. Gaines did not ride over the land.
Hnder these circumstances we think there can he no doubt about the justice of the case. The utmost extent of any credit which Henderson & Elliott can *380 J ustty claim on account of the timber is four hundred dollars. That is greater than the true amount; but it is what Gaines agreed to pay by the settlement afóresaid, and it is therefore the amount of the credit W^°k> and which alone, ought, in justice, to have been allowed.
We also think that the claim of the appellants is not only well founded in justice, but is also fully sustained by authority; and that they are entitled to relief on the ground of mistake on the part of one of them, Gaines, acting for himself and the rest, if not of fraud also on the part of Elliott.
If there was fraud on the part of Elliott, there can, of course, be no doubt of the right of the appellants to relief.
We think there can be little if any doubt of their right to relief on the ground of mistake. There are many authorities on this subject, which we deem it unnecessary to review. In 1st Story’s Eq. Jur., Library edition, § 141, it is said that “if the mistake be in the quantity of the land sold, as four acres instead of eight, this is sufficient to justify a court of equity in rescinding the contract, it being proved that the deficiency was material in the object of the purchase; and this would be so, although the land was described as being eight acres, “more or less”—these words being confined to a reasonable allowance for small errors in surveys, and for variations in instruments.”
See also Quesnel v. Woodlief, 6 Call 218; Blessing’s adm’rs v. Beatty, 1 Rob. R. 287; and other cases cited by the counsel for the appellants; also Belknap v. Sealey, 14 New York 143.
The court is therefore of opinion, that so much of the decree appealed from as is in conflict with the foregoing opinion is erroneous, and ought to be reversed *381 and annulled, and the residue thereof affirmed; which is decreed accordingly.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the circuit cqurt erred in not rendering a decree in favor of the trustees of William J. Watkins’ creditors for the sum of $800, with interest from the 20th day of December 1860, that being the true balance due on account of the price of the saw mill in the proceedings mentioned, instead of $240 with interest from that day, for which latter sum and interest, as such balance, the decree appealed from was actually rendered.
Therefore it is decreed and ordered that so much of the said decree appealed from as is in conflict with the foregoing opinion, and as is therein declared to be erroneous, be reversed and annulled, and the residue thereof affirmed; and that the appellee, George W. Booker, late sheriff of Prince Edward county, and as such administrator of C. H. Henderson, deceased, out of the assets of said decedent in his hands to be administered, and A. W. Elliott, out of his own estate, do pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here.
. And this court, proceeding to render such decree as ought tq have been rendered by the said circuit court, in lieu of so much of the decree appealed from as is reversed as aforesaid, it is further decreed and ordered that the defendant’s second exception to the commissioner’s report be overruled, and their third exception to said report be sustained; and that the said George W. Booker, late sheriff and administrator as aforesaid, out of the assets of the said C. H. Hen *382 derson, in the hands of said Booker, to be administered, and the said A. W. Elliott, out of his own estate, do pay to B. Y. Gaines and Thomas Watkins, trustees of William J. Watkins’ creditors, the sum of eight hundred dollars, with interest thereon from the 20th day of December i860 till payment.
Which is ordered to be certified to the said circuit court of the county of Charlotte.
Decree reversed.