# Richmond

E. S. Blanton v. Hugh Keneipp, Frances A. Keneipp, et als.

January 15, 1931.

Present, Prentis, C. J., and Holt, Epes, Gregory and Hudgins, JJ.

*E. A. Bilisoly* and *H. W. Dudley,* for the appellant.

*Wilson M. Farr,* for the appellees.

EPES, J., delivered the opinion of the court.

This is a suit in chancery instituted in October, 1928, in the Circuit Court of Fairfax county by E. S. Blanton against Hugh Keneipp and Frances A. Keneipp, and R. L. Roberts, George L. Knight, E. L. Bowling and Naples Gulf Front Company, a corporation.

The object of the bill is to enforce the payment by Hugh Keneipp and Frances A. Keneipp of a certain note for $38,700 drawn by E. L. Bowling payable to E. S. Blanton, which note was negotiated by Blanton to Naples Gulf Front Company, and subsequently reassigned by said company to Blanton. This note, it is alleged, was secured by a mortgage from Bowling to Blanton conveying certain property in Collier county, Florida, owned by Bowling, which property, subject to said mortgage, was later conveyed by Bowling to Hugh Keneipp and Frances A. Keneipp by a deed poll in which it is stated that the mortgage "is assumed by the grantee herein as a part of the consideration of this deed."

Personal service was had on Hugh Keneipp and Frances A. Keneipp, who appeared and demurred to the bill. An affidavit was made, the record certified up does not show by whom, that the other defendants were not residents of Virginia, and that their addresses were unknown, and they were proceeded against by order of publication, but none of them have appeared in said suit.

The cause was heard on the bill, the exhibits therewith filed, and said demurrer. The court entered its decree sustaining the demurrer, and dismissing the bill as to the demurrants, from which decree E. S. Blanton has appealed.

The grounds of demurrer assigned by the appellees (the defendants below) are as follows:

(1) "There are no grounds of equitable relief set forth in the said bill of complaint, and the mere fact that complainant has no cause of action on the law side of the court against demurrants does not empower a court of equity to entertain this suit.

(2) "All and every of the matters in the said complainant's bill mentioned and complained of are matters which may be tried at law, and in respect to which the said complainant is not entitled to any relief from a court of equity.

(3) "It appears from the bill and the exhibits filed therewith, that complainant does not come into court with clean hands and that he is not entitled to any equitable relief against demurrants."

The trial court does not indicate upon what ground, or grounds, it sustained the demurrer. The assignment of error is that the court erred in sustaining the demurrer upon any of said grounds.

Appellees seem to place chief reliance upon their third ground of demurrer and argue at length and with much insistence that the bill and exhibits show that Blanton has not come into court with clean hands, and that his conduct in taking a reassignment of the $38,700 note here involved

and bringing this suit to enforce payment thereof by these appellees is such as to shock the conscience of the court and debar him from any relief in a court of equity. Because of this fact and in order that all facts which the appellees contend contribute to sustain their charge of unconscionable conduct and unclean hands may be stated, it becomes necessary to state the facts plead in the bill and those appearing from the exhibits more fully and in more detail than would otherwise be necessary.

The facts alleged in the bill and· those which appear from the bill and the exhibits therewith filed, which are made a part thereof, are as follows:

By deed of mortgage dated July 3, 1925, R. L. Roberts conveyed a parcel of land owned by her in Collier county, Florida, to George L. Knight to secure to Knight a debt aggregating $35,000, evidenced by three notes of even date therewith, drawn by said Roberts, payable to the order of Knight two, three and four years after date, with interest at eight per cent per annum from date. Each of these notes provided that the maker would pay all costs and a reasonable attorney's fee, if placed· in the hands of an attorney for collection; and the mortgage provided that upon default for thirty days in the payment of any installment of principal or interest due on any of the notes, Knight or his assignees, at his or their option, might declare all the notes due and payable.

George L. Knight endorsed said notes "pay to the order Naples Gulf Front Company" (a corporation of which he was president), and by a deed of assignment, dated July 3, 1925, assigned said mortgage, together with the notes therein described, to the Naples Gulf Front Company.

By deed dated August 7, 1925, Roberts conveyed said parcel of land, subject to said mortgage, to E. L. Bowling, who, the deed states, "assumes the payment of said mortgage as a part of the consideration for this deed."

By a deed of mortgage dated the same day, Bowling conveyed said parcel of land to E. S. Blanton to secure to him a debt aggregating $51,000, evidenced by four notes of even date drawn by Bowling, payable to the order of Blanton, one note for $38,700 and another for $4,300 being payable one year after date, and one note for $4,300 and another for $3,700 being payable two years after date. Said notes bore interest at eight per cent per annum. In this mortgage it is stated that it is a "subsequent and second mortgage" to said mortgage from Roberts to Knight.

By deed dated November 17, 1925, Bowling conveyed said parcel of land to Hugh Keneipp and Frances A. Keneipp, who are therein stated to be man and wife, for ten dollars and other valuable consideration. This deed is not signed by the grantees. This conveyance is made subject to three mortgages, upon which the deed states the amounts due are as follows: Said mortgage from Roberts to Knight to secure $35,000; a mortgage from said Roberts to E. G. Wilkinson, dated July 3, 1925, "on which there is a balance due of $8,600;" and said mortgage from Bowling to Blanton, "upon which there is a balance due of $42,400." It is expressly stated in said deed that "the payment of the above mortgages is assumed by the grantee herein as a part of the consideration of this deed." This deed has United States revenue stamps to the amount of $174 affixed.

On June 2, 1926, Hugh Keneipp paid to Blanton said $3,700 note, and by deed dated that day Blanton assigned to Hugh Keneipp "thirty-seven four hundred and twenty-fourths interest in a certain indenture of mortgage," to-wit, the mortgage from Bowling to Blanton above mentioned, "together with the note or obligation described in said mortgage for $3,700 and the money due and to become due thereon." Said deed of assignment further states: "The mortgage herein mentioned secures two notes, one for $38,700 and one for $3,700. This assignment is intended to transfer only the note for $3,700."

By deed of assignment dated June 28, 1927, Blanton, "in consideration of the sum of ten dollars," assigned to Naples Gulf Front Company "all my right, title and interest in and to" said mortgage from Bowling to Blanton, "together with the note—described in said mortgage, and the money due and to become due thereon." This deed of assignment further states: "The interest in the aforesaid mortgage hereby conveyed is represented by a note, number one therein secured, amounting to $38,700, and is 387/510 of the total original amount secured in said mortgage. That portion of said mortgage is hereby conveyed and none other." When the $38,700 note was assigned to Naples Gulf Front Company it was endorsed by Blanton "without recourse."

Default was made in the payment of the first two notes secured by said mortgage from Roberts to Knight and of the $38,700 note secured by the mortgage from Bowling to Blanton, and in November, 1927, Naples Gulf Front Company, the holder of all the notes secured by the first mortgage and of the $38,700 note secured by the subsequent mortgage, instituted its suit in chancery in the Circuit Court for Collier county, Florida, to foreclose both said mortgages.

The foreclosure suit was brought by O. D. Batchelor as counsel for the complainant; but in March 1928, E. S. Blanton, as the representative of Naples Gulf Front Company, appeared before the master to whom this cause had been referred under a letter of authority from Naples Gulf Front Company, signed by its president, George L. Knight, authorizing Blanton, as "the agent and representative of the complainant," to appear "and make proof of the case of the complainant." This letter states that Blanton is appointed because of his "familiarity with the facts involved in the foreclosure suit."

R. L. Roberts was made a party defendant to the fore-

closure suit and filed her answer. *E. L.* Bowling was not made a party defendant to said bill, and did not appear; but "*L. A.* Bowling, Hugh Keneipp and Fran*cis* A. Keneipp, his wife," were made parties defendant in the bill, and upon affidavit that they were non-residents were proceeded against by order of publication. However, none of the three appeared in the foreclosure suit in any way.

In said foreclosure suit, the decree of the court took the bill *for confessed* as to the non-resident defendants, who were before the court only upon order of publication, but the evidence taken therein is sufficient to support the decrees entered therein, and no personal judgments were entered against any of the parties defendant.

The mortgaged property was sold in said suit for $45,000. After the payment of costs, including an attorney's fee of $4,813.25 allowed by the court to the complainant's attorney, O. D. Batchelor, there remained $39,866.30 from the purchase money, which sum was applied by the court on the debt secured by the first mortgage. This was insufficient to pay the principal and interest of the first mortgage debt, and left the $38,700 note secured by the second mortgage from Bowling to Blanton wholly unpaid. No decree was entered in this suit for the deficiency on the first mortgage debt or the amount due on the debt secured by the second mortgage.

By decree entered July 16, 1928, Naples Gulf Front Company was permitted to withdraw from the papers in the foreclosure suit the said note for $38,700.

After setting forth the foregoing facts, the bill in the suit here before us alleges that "subsequently to the foreclosure of the property aforesaid the note for the sum of $38,700 was sold and assigned to E. S. Blanton, complainant herein," and that this note still remains unpaid. The bill does not, however, state what was the consideration for either the assignment of the note by Blanton to Naples

Gulf Front Company, or the reassignment thereof to Blanton, or the facts and circumstances surrounding the assignment of the note by Blanton to the Naples Gulf Front Company and the reassignment thereof to Blanton.

The bill in effect prays that a personal decree may be entered against Hugh Keneipp and Frances A. Keneipp requiring them to pay to Blanton the sum of $38,700 with interest thereon at eight per cent per annum from August 7, 1925, evidenced by said note, the payment of which had been assumed by them as aforesaid.

█ It has long been established in Virginia that where a bond or note is secured by a mortgage upon real estate owned by the maker thereof, and afterwards the mortgagor conveys the mortgaged property to a grantee by a deed in which it is stated the grantee assumes the payment of the mortgage debt as a part of the consideration paid for the mortgaged property, if upon a foreclosure of the mortgage the property does not bring enough to pay off the whole of the mortgage debt, the mortgage creditor may proceed in a court of equity by an independent suit to obtain a personal decree against such grantee for so much of the mortgage debt as remains unpaid. *Willard* v. *Worsham,* 76 Va. 392; *Osborne* v. *Cabell,* 77 Va. 462; *Tatum* v. *Ballard,* 94 Va. 370, 26 S. E. 871; *Thacker* v. *Hubard,* 122 Va. 379, 94 S. E. 929, 21 A. L. R. 414; *Hubard* v. *Thacker,* 132 Va. 33, 110 S. E. 263, 21 A. L. R. 423.

█ The same rule applies where the mortgaged property has passed though the hands of successive grantees, each of whom has assumed the payment of the mortgage as a part of the purchase price, for the personal liability of the last grantee inures to the benefit of the mortgage creditor, and may be enforced by him. *Osborne* v. *Cabell, supra; Hubard* v. *Thacker, supra; Baber* v. *Hanié,* 163 N. C. 588, 80 S. E. 57, 12 A. L. R. 1518; 27 Cyc. p. 1355; 3 Pom. Eq. (4. ed.) p. 2887, note 4.

So also, if the notes secured by the mortgage have been assigned by the mortgagee, the assignee thereof may sue the vendee of the mortgagor who has assumed the payment of the mortgage debt for any deficiency arising on foreclosure, just as the original mortgage creditor might have done had there been no assignment of the debt. *Osborne* v. *Cabell*, 77 Va. 462; *Baber* v. *Hanie*, 163 N. C. 588, 80 S. E. 57, 12 A. L. R. 1518.

The jurisdiction of the court of chancery in such cases is placed by the Virginia decisions on the ground that the liability of the grantee of the mortgaged premises is based upon the equitable doctrine of subrogation and not upon any privity of contract or consideration between the mortgage creditor and the grantee of the mortgagor.

In *Willard* v. *Worsham, supra,* Staples, J., says: "As between the grantor and grantee, the latter is the principal debtor, and the grantor is his surety, and the creditor or mortgagee being entitled upon equitable principles to the benefit of all collateral securities held by his debtor, may resort by way of equitable subrogation to the covenant of the purchaser or grantee with the mortgagor." This language has been repeatedly cited and quoted with approval since.

The contention of the appellees that a mortgage creditor cannot maintain a suit in chancery against a grantee who has assumed the payment of the mortgage debt unless there have been such dealings between the mortgage creditor and the grantee as to create a contract between them in respect to the grantee's personal liability for the payment of the mortgage debt as to effect a novation of the original contract made between the mortgagor and the mortgagee, is not sustained by the authorities.

In such a case, the fact that the mortgaged property is located in a State other than Virginia and has been foreclosed in a suit brought in that State, to which suit

the vendee who has assumed the payment of the mortgage debt was made a party only by order of publication, does not operate to prevent the mortgage creditor from suing such vendee in Virginia to obtain a personal judgment against him for the unpaid balance on said debt, if such vendee be found and served with process in Virginia. *Tatum* v. *Ballard,* 94 Va. 370, 26 S. E. 871.

In *Thacker* v. *Hubard,* 122 Va. 379, 94 S. E. 929, 21 A. L. R. 414, decided in 1918, this court held, in an opinion written by Burks, J., that section 2415, Va. Code 1887, did not empower a mortgage creditor to sue in a court of law the grantee of the mortgaged property upon the assumption of and promise to pay the mortgage debt made in a deed or contract to which the mortgagee was not a party; and that the mortgage creditor can maintain a suit on such promise *only* in a court of chancery.

Section 2415, as it then read, provided that "if a covenant or promise be made for the *sole* benefit of a person with whom it is not made—such person may maintain in his own name any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise."

Since the decision in *Thacker* v. *Hubard* was rendered, section 2415, Code 1887, has been amended so as to greatly broaden its scope and re-enacted as section 5143 Va. Code 1919. The section as it now reads provides: "If a covenant or promise be made for the benefit, *in whole or in part,* of a person with whom it was not made," such person may maintain an action in his own name.

Appellees' second ground of demurrer, which is in effect that the appellant has a complete and adequate remedy at law, would seem to have been made upon the theory that under section 5143 the complainant might have brought an action at law to enforce the payment by the appellees

of the debt evidenced by said note; but in their brief appellees apparently abandon, if they do not in fact repudiate, this theory and this ground of demurrer.

However, even if under section 5143 the appellant may now sue the appellees at law on their said assumption of said mortgage debt, upon which point we here express no opinion, the statutory remedy by an action at law is cumulative only in cases such as that at bar, and does not oust courts of chancery from the jurisdiction they have long exercised to grant relief in such cases under the doctrine of subrogation.

■ Whatever may be the scope of the application of section 5770, Va. Code of 1919, which provides: "A court of equity shall not have jurisdiction of a suit upon a bond, note or writing, by an assignee or holder thereof, unless it appear that the plaintiff has not an adequate remedy at law," this section has no application to the case at bar.

The suit here brought against these appellees is not brought on said $38,700 note, or "upon a bond, note or writing" within the meaning of section 5770. It is brought upon the promise of the appellees to assume the payment of the mortgage debt, which promise is implied by law from the acceptance of a writing (said deed from Bowling to the grantees) which is not signed by the appellees. *Barnes* v. *Crockett*, 111 Va. 240, at p. 243, 68 S. E. 983, 36 L. R. A. (N. S.) 464; *Harris* v. *Shields*, 111 Va. 643, at p. 646, 69 S. E. 933; *Taylor* v. *Forbes, Adm'r*, 101 Va. 658, 44 S. E. 888; *Becker* v. *N. & W. Ry. Co.*, 125 Va. 558, at pp. 563–564, 100 S. E. 478; *Atlantic C. L. R. Co.* v. *Va. Mfg. Co.*, 119 Va. 5, at p. 8, 89 S. E. 103; *Pike* v. *Brown*, 7 Cush. (Mass.) 133; *Braman* v. *Dowse*, 12 Cush. (Mass.) 227; *Locke* v. *Homer*, 131 Mass. 93, 41 Amer. Rep. 199, at p. 208, *et seq.*

■ Either under the first ground of demurrer or under the third ground of demurrer, it is not plain from appellees'

brief which, appellees set up the following contention in support of their demurrer. "If, after said foreclosure, Naples Gulf Front Company had any cause of action against the appellees because of the unpaid balance on the debt secured by said first mortgage and said $38,700 note which was secured by said mortgage, it was one entire demand, which as a matter of law said corporation could not split up and bring separate suits thereon against the appellees. Therefore, Blanton, as an assignee of a part only of said corporation's said demand, has no standing in a court of equity."

This contention is wholly untenable. Both before and after said foreclosure proceeding, the Naples Gulf Front Company had several causes of action, not one cause of action. The several notes secured by said two mortgages were in their inception severally negotiable. Had they all been negotiated to different persons, the holder of each would have had the right to sue thereon without being liable to the objection that a single cause of action was thereby being split up. Both under the law merchant and the uniform negotiable instruments act, each of these notes continued to be negotiable, even after maturity, until it had been restrictively endorsed or discharged by payment or otherwise. Biglow on Bills, Notes and Checks (3 ed.) section 483; Compl. L. of Fla. (1927) section 6806; Va. Code (1919) section 5609. The promise of the appellees to pay the several mortgages was a promise to pay the said several negotiable notes secured by said several mortgages to the respective payees thereof, or *to the person or persons to whom they might severally be negotiated;* and the appellees cannot complain that one of the notes secured by one of the mortgages has been negotiated and assigned to a person who is not the holder of the others of said notes or entitled to receive payment of the balance due thereon. The foreclosure of the mortgage in no way changed these facts.

The fallacy of this contention of the appellees is even more patent when it is noted that the makers of the notes secured by the first and second mortgages are not the same, and that there are other persons obligated on the notes secured by the first mortgage who are not obligated on the notes secured by the second mortgage.

Unless there be merit in the third ground of demurrer, the demurrer should have been overruled. Indeed, appellees seem to place their chief reliance upon this ground of demurrer, and devote a large part of their brief to arguing that the relief sought by the appellant is "purely equitable relief," wholly dependent upon the equitable doctrine of subrogation, and that the bill and exhibits show that Blanton has been guilty of such conduct with relation to the subject matter of this suit as to shock the conscience of a court of chancery, and, as it is expressed in appellees' brief, "bar him at the entrance without regard to the merits of the cause which might otherwise be cognizable by the court."

The gist of appellees' contention that the appellant has been guilty of such conduct as to shock the conscience of the court, is that the bill and exhibits show that the appellant in taking a reassignment of said $38,700 note, with full knowledge of the facts relating thereto and to the foreclosure suit in Florida, and in bringing this suit, if not strictly guilty of champerty or maintenance, has been guilty of conduct "*savoring*" of it; and should therefore be refused in a court of equity. The appellees in their brief summarize their contention in this respect as follows:

"The record shows that complainant received full payment for the note in question, and assigned it to the purchaser *without recourse;* that subsequent thereto the security for the payment of said note and a prior mortgage note was foreclosed and exhausted in a suit irregular in some aspects and of which these defendants had no actual notice;

that under the foreclosure the proceeds of sale were insufficient to pay off the first mortgage note; that these defendants had paid $174,000 for an equity in said land which was a total loss to them in said foreclosure proceedings; that complainant voluntarily purchased a *part of the deficit*, evidenced by the unpaid note under the second mortgage, which note he had theretofore been paid in full with no obligation, legal or moral, to repay same, all of which was known to complainant.

"The complainant in the case at bar was a volunteer, purchasing this note for what he could make out of it, with full knowledge of all the facts and without any duty to do so. It is not believed a court of equity will apply the equitable doctrine of subrogation at the request of a party who is in effect an absolute volunteer and qualifiedly, at least, trafficking in law suits. When the facts are considered, under which complainant's right to subrogation is to be granted or denied, it is respectfully submitted he does not present a cause of action which will appeal to the conscience of a chancellor, and that to grant him the relief prayed would be to encourage the purchase by strangers of dishonored claims of questionable value which could be presented solely to a court of equity for disposition."

Not all the facts which the appellees contend appear from the bill and exhibits appear therefrom. But assuming that they do, still the facts plead in the bill and appearing from the exhibits fail to establish that Blanton has been guilty of fraud, unfair dealing, sharp practice, or other unconscionable conduct, or has entered into any agreement savoring of champerty or maintenance, which renders his hands unclean and debars him from relief in a court of chancery.

The court should have overruled the demurrer and put the defendants to their plea or answer, in which they may, of course, set it up as a defense, if Blanton in fact has been

guilty of any unconscionable act or agreement which renders his hands unclean and debars him from relief in a court of chancery. The decree appealed from will be reversed, and the cause remanded for further proceeding to be had therein not in conflict with the views herein expressed.

*Reversed.*