442 S.E.2d 669 (1994)
Margaretha W. LANGMAN
v.
ALUMNI ASSOCIATION OF the UNIVERSITY OF VIRGINIA, et al.
Record No. 930663.
Supreme Court of Virginia.
April 15, 1994.
*671 James N. Deinlein, Charlottesville (Peter B. Vaden, Feil, Deinlein, Pettit & Williams, on briefs), for appellant.
Kenneth G. Roth, Fairfax (Montedonico, Hamilton & Altman, on brief), for appellee Alumni Ass'n of University of VA.
No brief or argument on behalf of appellees Caleb N. Stowe, Leroy R. Hamlett and Resolution Trust Corp.
Present: CARRICO, C.J., COMPTON, STEPHENSON, WHITING, LACY and KEENAN, JJ., and POFF, Senior Justice.
*670 KEENAN, Justice.
The primary issue in this appeal is whether a deed containing a mortgage assumption clause was repudiated by the grantee.
Dr. Margaretha W. Langman filed a bill of complaint seeking a declaration of rights pursuant to a deed to real property. The bill of complaint named, among others, the Alumni Association of the University of Virginia, doing business as the University of Virginia Fund (Alumni Association), which was the grantee in the deed. Langman, one of the grantors in the deed, alleged that the Alumni Association had failed to pay the mortgage secured by the property conveyed by the deed, in contravention of a mortgage assumption clause in the deed.
Langman further alleged that she had cured the default, but that the Alumni Association had refused to reimburse her, contending that it was not obligated by the assumption clause in the deed. The Alumni Association interposed affirmative defenses of fraud, mutual mistake, and the statute of frauds.
The trial court received evidence in a three-day hearing. The evidence showed that Langman, a psychologist, and Caleb N. Stowe, a real estate broker, both residents of Albemarle County, previously had dealt together in commercial real estate transactions. On June 3, 1986, Langman and Stowe, as tenants in common, purchased commercial real property from Empire Management & Development Company, Inc. (Empire). The property, known as "Ferdinand's Arcade," was located in Allegany County, Maryland, and included an "arcade type" commercial building.
*672 The sales contract included a provision by which Empire guaranteed a specified monthly income from the property until the actual income equalled or exceeded the guaranteed amount for three consecutive months. The closing statement further provided that Empire's rental guarantee would survive the closing of the transaction.
The deed stated a consideration of $780,000. An appraiser for the mortgagee had valued the property, as of March 19, 1986, at $775,000. In connection with the transaction, Langman and Stowe executed a note payable to Dominion Federal Savings and Loan Association (Dominion Federal)[1] in the amount of $600,000, secured by a first deed of trust on the real property and its improvements, fixtures, rents, and income.
Later in 1986, both Langman and Stowe determined that they would make separate gifts to the University of Virginia. Stowe wished to honor a pledge of $100,000, and Langman wished to establish an endowed chair in the university's medical school. These gifts were to be accomplished by the transfer of the Ferdinand's Arcade property to the university.
Samuel B. Long, III, of the Office of University Development, suggested to Stowe that the property be conveyed to the Alumni Association. Marion B. Peavey, Vice President for University Development, testified that assets owned by the Alumni Association were more easily liquidated than those held by the university itself.
Correspondence dated in December 1986 and April 1987 between Peavey and Langman's son, who was writing on Langman's behalf, shows that part of Langman's initial contribution to funding of the endowed chair was to derive from Langman's "equity interest" in the Ferdinand's Arcade property, which was valued in the correspondence at approximately $86,000.
The deed that is the subject of this litigation is dated December 30, 1986. It states that Langman and Stowe, as grantors, convey to the Alumni Association, as grantee, the Ferdinand's Arcade property in fee simple. The consideration recited is "the love and respect which the Grantors have for the University of Virginia."
The deed states that the property is subject to the lien of the deed of trust securing the $600,000 debt to Dominion Federal. The next sentence reads, "The Grantee does hereby assume payment of such obligation and agrees to hold the Grantors harmless from further liability on such obligation." The deed was not signed by a representative of the Alumni Association, nor was there a space provided for the grantee's signature.
Langman testified that she signed the deed on December 31, 1986, that she read the deed very carefully, that she understood the legal significance of the mortgage assumption clause and the difference between a mortgage assumption and a transfer "subject to" a mortgage, and that she would not have signed the deed if it had not contained a mortgage assumption clause. She stated that her expectation was that, if the Alumni Association wished to obtain her equity interest in the property in order to begin funding her gift of the endowed chair, it would have to assume the mortgage debt on the property.
In a letter dated December 31, 1986, Gilbert J. Sullivan, director of the Alumni Association, wrote to Langman and Stowe and acknowledged the gift represented by the deed. David Murphy, a certified public accountant and comptroller of the Alumni Association, testified that at some point in early 1987 he received the deed and, in accordance with Sullivan's instructions, delivered it to Joseph M. Wood, II, an attorney for the Alumni Association, in order to have it recorded. Wood testified that he received the deed from Murphy in March or April of 1987, and that he was asked only to have the deed recorded in Maryland, which he accomplished. He then returned the original deed to Murphy.
Both Murphy and two accountants employed by the Alumni Association's independent auditors stated that the Dominion Federal mortgage on the property was viewed *673 and journaled as a liability of the Alumni Association. Further, the audited balance sheets and financial statements of the Alumni Association for the fiscal years ended June 30, 1987, and June 30, 1988, identified the Dominion Federal mortgage as a liability, and the footnotes to financial statements stated that the Alumni Association had "assumed the mortgage on property donated during the year ended June 30, 1987." One of the auditors testified that the language of the footnotes reflected a mortgage assumption, rather than a conveyance "subject to" a mortgage, in accordance with differences in the way the two types of transactions were viewed from an accounting perspective.
Sullivan testified that he objected to the independent auditors about the fact that the balance sheet showed a liability associated with the Ferdinand's Arcade property, because this did not accord with his understanding that the Alumni Association had no responsibility for the Dominion Federal indebtedness. However, both Murphy and the accountants employed by the independent auditors denied that any complaints of this kind reached them.
The evidence also established an oral agreement between Stowe and the Alumni Association whereby Stowe undertook, after the conveyance of Ferdinand's Arcade to the Alumni Association, to "follow through, manage [the] property, collect the rents, and get it sold." Beginning in 1987, Stowe assumed the management of the property and its tenants, and saw that both the operating expenses and the mortgage debt were paid out of the property's income. When the income was insufficient to meet these expenses, Stowe paid the shortfall from his own funds.
In both 1987 and 1988, the expenses did in fact exceed the revenues. For the fiscal years ending in 1987 and 1988, both Stowe and the Alumni Association originally recorded the shortfall amount as a debt owed to Stowe; however, after the Alumni Association's yearly audit, Stowe forgave the debt, the Alumni Association removed its accounts payable entry, and both parties treated the amount as a charitable contribution on the part of Stowe. During the time period from 1987 through early 1989, several lease documents and a liquor license application were signed relating to business tenants at Ferdinand's Arcade, which show the Alumni Association as the "lessor" and "owner of premises" and bear Sullivan's signature as the Alumni Association's agent.
In the summer of 1989, Stowe apparently became unable to continue making up the shortfalls in expenses on the Ferdinand's Arcade property, including the debt service. At that time, his building and development corporation entered Chapter 11 bankruptcy proceedings. In August 1989, Trustbank, the successor in interest to Dominion Federal, notified Langman that the note secured by the Ferdinand's Arcade property was in default, and it called upon her to cure the default. Langman in turn demanded that the Alumni Association make the required payments, but the Alumni Association disclaimed any responsibility for payment of the mortgage debt. Langman paid the amounts demanded under a reservation of rights and commenced this litigation.
In its letter opinion, the trial court held that the Alumni Association "did not knowingly accept the gift with contractual conditions," that the assumption clause was mistakenly placed in the deed by an unknown draftsman, and that by its disavowal of the obligation sought to be enforced, the Alumni Association had "sufficiently rejected the gift to require a finding by the court that the conveyance is ineffective." The trial court held that the assumption clause was unenforceable and the attempted conveyance a nullity, and that the Alumni Association had no liability to the mortgagee, Langman, or Stowe with regard to the amounts paid or the remaining debt.
Langman contends that the trial court's ruling was in error on two principal grounds. She argues that parol evidence was improperly admitted to contradict the unambiguous language of the deed. The erroneous admission of this evidence, she contends, was the foundation for the trial court's holding that the Alumni Association had no clear understanding of the deed's contents; that the deed contained contractual provisions that were contrary to the parties' intentions, as shown by their discussions leading up to the *674 conveyance; and that there was no meeting of the minds between the grantors and grantee of the deed. Further, Langman contends that the Alumni Association could not escape its mortgage obligation by disavowing that obligation more than two years after it had accepted the deed containing the mortgage assumption clause.
The Alumni Association argues that the trial court correctly found that the assumption clause was mistakenly inserted in the deed by an unknown draftsman, and that each of the parties actually intended the Alumni Association to have no responsibility for the debt. The Alumni Association further argues that there was no proof of its actual assent to the obligation imposed by the deed. Moreover, it contends that parol evidence was properly admitted to prove its allegations of fraud, mistake, and failure of consideration.

I. ADMISSION OF PAROL EVIDENCE
The trial court's findings of fact are binding upon this Court unless they are plainly wrong or unsupported by the evidence. Quantum Dev. Co. v. Luckett, 242 Va. 159, 161, 409 S.E.2d 121, 122 (1991). Here, however, the trial court's findings are unsupported by the evidence, since they are based on erroneously admitted parol evidence.[2]
It is apparent that the trial court relied on parol evidence of the parties' intentions and the circumstances surrounding the transaction, because the court's letter opinion speaks of the transaction as being "contrary to the intentions of the parties as revealed in their discussions preceding the transfer." In considering parol evidence, the court apparently accepted the argument advanced by the Alumni Association that the deed was rendered ambiguous by an "internal inconsistency" in that it conveyed a gift yet provided for the assumption of indebtedness.
The parol evidence rule applies to written instruments, including deeds, that express the terms of the parties' agreement. "`[P]arol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional, written instrument.'" Amos v. Coffey, 228 Va. 88, 92, 320 S.E.2d 335, 337 (1984) (quoting Godwin v. Kerns, 178 Va. 447, 451, 17 S.E.2d 410, 412 (1941)).
The question whether a writing is ambiguous is not one of fact but of law. Thus, the trial court's conclusions in this regard are not binding on this Court, and we are provided with the same opportunity as the trial court to consider the written provisions of the deed in question. Wilson v. Holyfield, 227 Va. 184, 187-88, 313 S.E.2d 396, 398 (1984); see also Christopher Assocs. v. Sessoms, 245 Va. 18, 22, 425 S.E.2d 795, 797 (1993).
The language in the deed providing that the Alumni Association, as grantee, "does hereby assume payment of [the Dominion Federal note] and agrees to hold the Grantors harmless from further liability on such obligation" is clear, unambiguous, and explicit. "Where such is the case, a court called upon to construe such a deed should look no further than the four corners of the instrument under review." Trailsend Land Co. v. Virginia Holding Corp., 228 Va. 319, 325, 321 S.E.2d 667, 670 (1984). As this Court explained in Camp v. Camp, 220 Va. 595, 260 S.E.2d 243 (1979),
[t]he prime consideration, as with any writing, is to determine the intention of the parties executing the instrument. The intention, including a finding as to the estate conveyed, should be ascertained from the language used in the deed, if possible. If the language is explicit and the intention is thereby free from doubt, such intention is controlling, if not contrary to law or to public policy, and auxiliary rules of construction should not be used.
Id. at 597-98, 260 S.E.2d at 245 (citations omitted). See also 4 Herbert T. Tiffany, The Law of Real Property § 977 (3d ed. 1975).
*675 Unlike the trial court, we find no ambiguity in a deed of conveyance by gift that also provides for consideration to be received by the donor. In ascertaining the grantor's intent, we must examine the instrument as a whole and give effect to all the provisions thereof. Where there is no conflict in any of the provisions of the deed and no repugnancy results, all parts thereof should be given effect. Fitzgerald v. Fitzgerald, 194 Va. 925, 929, 76 S.E.2d 204, 207 (1953).
Here, the terms of the deed are not inconsistent, contradictory, or repugnant. The unambiguous terms of the deed show that the grantor intended to transfer her entire interest in the property to the Alumni Association. For the portion of her interest that was encumbered by the mortgage, she was to receive full consideration. For her "equity," or the portion of her interest that was unencumbered, she was to receive no consideration, but would make a gift. Thus, parol evidence was inadmissible to show that the Alumni Association did not agree to assume the mortgage, or that it did not know the clause was included in the deed.

II. ACCEPTANCE OF DEED
Assigning cross-error, the Alumni Association argues that it cannot be bound by the mortgage assumption provision since no representative of the Alumni Association signed the deed. We disagree, however, based on the Alumni Association's actions signifying its acceptance of the deed.
A grantee who accepts a deed becomes contractually bound by its provisions, and becomes liable to perform any promise or undertaking imposed by the deed on the grantee, including a promise to assume an existing mortgage. Thacker v. Hubard, 122 Va. 379, 386, 94 S.E. 929, 932-33 (1918); Taylor v. Forbes, 101 Va. 658, 663, 44 S.E. 888, 890 (1903); 2 Robert T. Devlin, The Law of Real Property and Deeds § 1074 (3d ed. 1911).
Acceptance on the part of the grantee is implied, because the conveyance is presumed to be beneficial, unless the grantee refuses to accept the deed by some act of renunciation, dissent, disagreement, or disclaimer. Bowden v. Parrish, 86 Va. 67, 69, 9 S.E. 616, 617 (1889); Skipwith v. Cunningham, 35 Va. (8 Leigh) 271, 281-85 (1837). See also 4 Tiffany, supra, § 1056 (3d ed. 1975). The question whether a grantee has accepted a deed is not determined by the presence or absence of the grantee's signature on the deed, but by factual evidence of the grantee's actions tending to prove either acceptance or renunciation of the conveyance. It remains true today that "[i]nnumerable deeds of conveyance ... have been made, and are now on record in our courts, which have never been signed by the grantees, their acceptance being evinced only by taking possession and other acts in pais." Skipwith, 35 Va. (8 Leigh) at 284.
In the present case, delivery of the deed was established by the evidence of the grantors' intention to convey the Ferdinand's Arcade property to the Alumni Association, and of receipt of the deed by the Alumni Association's agents, Murphy and Wood, in the spring of 1987. See Flippo v. Broome, 202 Va. 919, 925, 121 S.E.2d 490, 494 (1961); Payne v. Payne, 128 Va. 33, 44, 104 S.E. 712, 716 (1920); Leftwich v. Early, 115 Va. 323, 328, 79 S.E. 384, 388 (1913). During the approximately 30 months between the date of execution of the deed on December 31, 1986, and August 1989, when controversy began regarding responsibility for the mortgage debt, the Alumni Association took no actions to resist the passage of title or to repudiate either the gift of real property or the debt connected with it. On the contrary, during this time period the conduct of Alumni Association demonstrated its acceptance of the conveyance.
The evidence showed that the Alumni Association, through its agents, recorded notice of its ownership in the public land records, claimed the property among both its assets and its liabilities in its financial records, represented itself as owner and lessor in written documents connected with the property, and entered Stowe's discharge of portions of the mortgage debt as charitable contributions. The only evidence of protest appears in Sullivan's testimony that he questioned whether the liability associated with *676 the property was the Alumni Association's responsibility.
However, Sullivan's complaints related only to the mortgage liability, and not to the Alumni Association's ownership of the property itself. Further, his complaints were voiced only "internally," to the Alumni Association's comptroller and to its paid auditors.
We hold that the above evidence does not support the trial court's finding that the Alumni Association timely disavowed the deed. The Alumni Association's complaints to its comptroller and to its auditors were insufficient to effect a renunciation of its title to the property. Those complaints related only to the mortgage liability; the Alumni Association never disavowed its title to the property. Moreover, the Alumni Association's affirmative conduct, set forth above, evidences its acceptance of the deed through its ongoing assertion of ownership of the property. Having accepted the conveyance, the Alumni Association is bound by the terms of the deed. Thacker, 122 Va. at 386, 94 S.E. at 932; Taylor, 101 Va. at 663, 44 S.E. at 890.

III. STATUTE OF FRAUDS
We also disagree with the Alumni Association's contention that the trial court erred in holding that the statute of frauds does not bar enforcement of a mortgage assumption clause that is not signed by the grantee.
Code § 11-2 provides, in material part:
Unless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought in any of the following cases:
. . . . .
4. To charge any person upon a promise to answer for the debt, default, or misdoings of another[.]
The Alumni Association argues that the "suretyship" provision of the statute of frauds, Code § 11-2(4), required the Alumni Association to sign a written agreement to assume the mortgage. Citing Lawson v. States Construction Co., 193 Va. 513, 517, 69 S.E.2d 450, 453 (1952), the Alumni Association contends that this Court has held that any "collateral" promise to answer for the debts of another must comply with Code § 11-2(4). The Alumni Association asserts that, because Langman would remain secondarily liable to Dominion Federal on the mortgage debt even after an effective assumption of the debt, the Alumni Association's agreement to assume the mortgage was a "collateral" promise falling within the scope of Code § 11-2(4). We disagree.
A grantee who assumes an existing mortgage is not a surety. The grantee makes no promise to the mortgagee to pay the debt of another, but promises the grantor to pay to the mortgagee the debt the grantee owes to the grantor. This is an original undertaking. Blanton v. Keneipp, 155 Va. 668, 678, 156 S.E. 413, 416 (1931); 2 Devlin, supra, §§ 1056, 1073-74; 2 Leonard A. Jones, A Treatise on the Law of Mortgages of Real Property § 750 (7th ed. 1915); 5 Herbert T. Tiffany, The Law of Real Property § 1437 (3d ed. 1939); see also Goode v. Bryant, 118 Va. 314, 322-23, 87 S.E. 588, 591-92 (1915).
A collateral undertaking to which Code § 11-2(4) applies is one in which the promisor is merely a surety or guarantor, receives no direct benefit, and is liable only if the debtor defaults. Colonial Ford Truck Sales, Inc. v. Schneider, 228 Va. 671, 676, 325 S.E.2d 91, 93-94 (1985). Here, the Alumni Association received a direct benefit and did not merely act as surety for the grantors. Therefore, we conclude that the trial court did not err in ruling that the statute of frauds does not bar enforcement of the mortgage assumption clause.

IV. FRAUD AND MISTAKE
The Alumni Association next argues that the trial court erred in failing to rule that the mortgage assumption clause is unenforceable on the basis of actual or constructive fraud, mutual mistake, or unilateral mistake induced by inequitable conduct. The Alumni Association contends there was actual or constructive fraud in the transaction, *677 because Langman either intentionally or negligently misrepresented material facts.
The Alumni Association argues that either Langman or her son told the Association that Langman had an equity interest of approximately $86,000 in the property, based on the purchase price of $780,000, when in fact the property had been overvalued in the transaction by which Langman and Stowe acquired the property from Empire. We consider these allegations in accordance with the rule that a party alleging fraud has the burden of proving by clear and convincing evidence all the elements of the cause of action. E.g., Thompson v. Bacon, 245 Va. 107, 111, 425 S.E.2d 512, 514 (1993); Elliott v. Shore Stop, Inc., 238 Va. 237, 244, 384 S.E.2d 752, 756 (1989); Corbett v. Bonney, 202 Va. 933, 939, 121 S.E.2d 476, 481 (1961).
Some evidence was presented suggesting that the property had a value of less than $780,000, including tax assessments placing the "full cash value" in 1986 at about $350,000, and the contract provision obligating Empire to pay rental guarantees to Langman and Stowe, which may have inflated their agreed-upon purchase price. The trial court received other evidence, however, including a recent appraisal of the property, that showed that the $780,000 purchase price accurately reflected the value of the property as represented to the Alumni Association by Langman and her son. Based on the above evidence, we conclude that the trial court did not err in failing to find clear proof of a material misrepresentation and, thus, did not err in rejecting the Alumni Association's claims of actual and constructive fraud.
We also find no merit in the Alumni Association's contention that the trial court should have invalidated the assumption clause, based on Langman's inequitable conduct inducing a unilateral mistake on the part of the Alumni Association. The conduct cited by the Alumni Association includes the evidence of lesser valuation, as discussed above, and Langman's treatment of the purported charitable gift as a business transaction. However, the cases offered by the Alumni Association to support its position demonstrate that such "inequitable conduct" is indistinguishable from fraud. Logwood v. Holland, 131 Va. 186, 195-96, 108 S.E. 571, 575 (1921); Watkins v. Elliott, 69 Va. (28 Gratt.) 374, 376-80 (1877); Blessing v. Beatty, 40 Va. (1 Rob.) 287, 298 (1842). Since, as stated above, the trial court did not err in finding the evidence insufficient to prove fraud, we do not consider further the Alumni Association's allegations of "inequitable conduct."
The Alumni Association also assigns error to the trial court's finding that Langman read the deed and signed it with knowledge that it contained the mortgage assumption clause. The Alumni Association argues that this finding is plainly wrong, because it is in conflict with other evidence suggesting that the clause had mistakenly been inserted in the deed. We disagree and find no error.
A contract may be reformed or rescinded in equity on the ground of mutual mistake. The mistake must be common to both parties. Briggs v. Watkins, 112 Va. 14, 24-25, 70 S.E. 551, 554 (1911). A unilateral mistake will not invalidate a contract. Chang v. First Colonial Sav. Bank, 242 Va. 388, 392, 410 S.E.2d 928, 930 (1991).
As noted above, Langman testified that she clearly understood the terms of the deed and that it effectuated her intentions with regard to the transaction. The trial court stated in its oral findings that it had been "established beyond contradiction that Mrs. Langman read and signed [the deed] and was conscious of the contractual provisions of the assumption of the debt."
It is the province of the trial court to assess the credibility of witnesses and the probative value to be given their testimony. Richardson v. Richardson, 242 Va. 242, 246, 409 S.E.2d 148, 151 (1991). The trial court's finding regarding Langman's knowledge of the contents of the deed is not plainly wrong, and, because this finding necessarily defeats a theory of mutual mistake, we hold that the trial court did not err in refusing to invalidate the mortgage assumption clause on that basis.[3]
*678 V. FAILURE OF CONSIDERATION
Finally, the Alumni Association argues that the trial court erred when it did not find that failure of consideration precluded enforcement of the assumption clause. The Alumni Association claims that it did not receive the expected consideration for its agreement to assume the mortgage, because Langman had no equity interest to be transferred. Therefore, it argues, if the mortgage assumption clause is enforced, it will be made to bear the obligations of the transaction but will receive none of its benefits. We disagree.
First, this argument is based on the Alumni Association's assertion that the property was overvalued and was worth less than the amount of the mortgage debt. However, the trial court, in resolving conflicting evidence, held that the independent appraisal negated the possibility that a fictitious value had been placed on the property. Further, the Alumni Association's argument disregards the fact that, while Langman received a release of her primary liability on the mortgage, the Alumni Association received all Langman's interest in the real property. The Alumni Association plainly received some benefit from this transaction, which constituted consideration for the promise that it made.
For the foregoing reasons, we hold that the trial court erred in declaring the conveyance of record between Langman and the Alumni Association to be ineffective and a nullity; that the trial court erred in declaring the assumption clause contained in the deed to be unenforceable; and that the trial court erred in holding that the Alumni Association has no liability to Langman or to Dominion Federal's successor in interest with regard to the mortgage debt. Therefore, we will reverse the trial court's decree and remand the case for further proceedings on Langman's bill of complaint in accordance with the principles set forth in this opinion.
Reversed and remanded.
NOTES
[1] Dominion Federal was later succeeded in interest by Trustbank Savings, F.S.B. Trustbank, in turn, was succeeded by the Resolution Trust Corporation.
[2] The trial court acknowledged that Langman had stated a "continuing objection" to the admission of parol evidence for the purpose of explaining or contradicting the terms of the written deed.
[3] The Alumni Association elicited Langman's testimony for the purpose of proving its allegations of fraud and mistake that would invalidate the contract between the parties. As such, this testimony was admissible under an exception to the parol evidence rule. See Shevel's, Inc. v. Southeastern Assocs., Inc., 228 Va. 175, 182-83, 320 S.E.2d 339, 343-44 (1984).