## Wanda Brown Elliott

## v.

## Shore Stop, Inc., et al.

Record No 871248

September 22, 1989

Present: All the Justices

*William Vinton Hoyle, Jr. (Mark A. Allen; Robert Moody, IV; Hoyle & Allen, P.C.*, on brief), for appellant.

*Sharon Padgett Hughes; Joseph T. McFadden, Jr. (William E. Rachels, Jr.; Laura J. Holland; Paul D. Fraim; Willcox & Savage, P.C.; Heilig, McKenry, Fraim & Lollar*, on briefs), for appellees.

Justice Compton delivered the opinion of the Court.

In this employment dispute, an employee, when ordered by her employer to submit to a polygraph examination, sent an impostor to take the test. Subsequently, the employee was discharged by the employer because she failed the examination. In this action brought by the employee and decided below on demurrer, we must examine the employee's allegations and determine whether she has stated a cause of action in damages against the employer and the company administering the lie detector test.

In November 1986, the employee, Wanda Brown Elliott, filed this action for compensatory and punitive damages. The 41-paragraph motion for judgment contained numerous counts asserting various theories of recovery. Named as defendants were the plaintiff's former employer, Shore Stop, Inc., trading as Little Sue Food Stores, Inc., and its agents, Ray Kishlar and John Myers. Also named as defendants were Franklin Security Systems, Inc. and its agent, Don Pope. According to the plaintiff's instructions, process was not issued to Myers and he made no appearance in the action.

Shore Stop, Inc. and Kishlar (collectively, Shore Stop) filed a demurrer. Franklin Security Systems and Pope (collectively, Franklin Security) filed a separate demurrer. After oral argument of the demurrers, the plaintiff nonsuited several counts as to some or all defendants. Subsequently, after counsel had filed written memoranda of law, the trial court sustained both demurrers. We awarded the plaintiff this appeal to the August 1987 order, which dismissed the motion for judgment without leave to amend.

A demurrer, of course, tests the legal sufficiency of the motion for judgment. Thus, the trial court, and this Court upon re-

view, are confined to the facts alleged when analyzing the pleading; no consideration properly can be given to additional facts that may be asserted on brief or during oral argument.

■ A demurrer admits the truth of all material facts that are properly pleaded. According to this rule, the facts admitted are those expressly alleged, those which are impliedly alleged, and those which may be fairly and justly inferred from the facts alleged. *Bowman* v. *State Bank of Keysville*, 229 Va. 534, 536, 331 S.E.2d 797, 798 (1985).

Conscious of the foregoing principles, we will summarize the allegations of the motion for judgment, relating the facts at this stage of the proceeding as if they are true. In April 1984, the plaintiff was hired by Shore Stop to be manager of a Little Sue convenience store at Gloucester Point. During the period of her employment until 1986, the plaintiff performed her duties competently, received consistent raises, and achieved the highest recommendation by her supervisor. In May 1986, Myers became her supervisor. Defendant Kishlar was the regional sales manager for Shore Stop's chain of stores.

On July 25, 1986, Myers informed plaintiff that she would be required to take a polygraph test because of a "bad inventory" result in her store. Believing the inventory had been performed by other persons incorrectly, she refused to take the examination. She had been forced to undergo another such test during the previous month, and had taken and passed five polygraph examinations during the period of her employment.

On July 27, a Sunday, Myers called plaintiff at her home and she informed him again that she refused to take the polygraph test. On July 28, Myers came to plaintiff's store and informed her that she must take the test or "leave her job," and that this directive was approved by Kishlar. Again, plaintiff refused to take the examination and handed Myers a letter of resignation. Myers accepted the letter but stated that he would "hold the paperwork" for seven days in case the plaintiff changed her decision. Myers said that if she decided to take the polygraph she could return to work.

During that afternoon, the plaintiff advised Myers that she would agree to take the test in order to retain her job. Myers arranged for the test to be administered on July 30 at 1:00 p.m. in Norfolk by defendant Pope of Franklin Security.

During the morning of July 30, the plaintiff received a telephone call from an unidentified female caller who stated: "I overheard John Myers say that you would not pass the polygraph. You've been set up. Good luck." Plaintiff believes this caller was a receptionist at Shore Stop's corporate office.

At that point, plaintiff called a friend, Kathy Cagle, who agreed to take the polygraph examination in plaintiff's stead. Cagle was a former employee and sales clerk in the plaintiff's store.

Upon arrival at the office of Franklin Security, Cagle identified herself as "Wanda Brown." Cagle never was asked for proof of her identity by anyone at Franklin Security. Approximately an hour later, Cagle was taken to Pope's office and, before being connected to the polygraph equipment, correctly answered questions concerning plaintiff's birth date, birth place, and social security number. Cagle then was questioned about various aspects of her employment at the Little Sue store, including questions about "floating checks," improper use of her time card, taking money from the cash register, and use of a charge sheet for employee purchases. Pope then handed Cagle a sheet of paper with four statements concerning matters they had discussed, which Cagle dated and signed "Wanda Brown."

Cagle then was connected to the polygraph equipment and answered a series of questions concerning her identity and her employment at the Gloucester Point Little Sue store. According to the test results, the plaintiff tested positive for deception when she answered "no" to questions whether, since her last polygraph test, she had stolen money or merchandise from the Little Sue store or intentionally had failed to pay for beer that she carried home from the store.

On July 31, 1986, Myers, acting for Shore Stop, discharged the plaintiff from her employment, stating that she could not return to work because she had "failed the polygraph." At the time of discharge, defendants were unaware that a substitute examinee had been tested.

In a breach of contract count, plaintiff asserted that Shore Stop, expressly and impliedly, represented that her employment was permanent and could be terminated only if she gave the employer "good cause" to discharge her. She alleged that her employment was "exemplary" until defendants "arranged" for her to fail the examination. She charged that the employer unilaterally breached the contract causing her harm.

In a count labelled "Wrongful Discharge," plaintiff alleged her termination was against public policy because it was fraudulent. She asserted that Myers told others that "Wanda Brown is nothing but trouble" and that Myers "had to get rid of " the plaintiff. He said that plaintiff "did not know what she was doing" and that Shore Stop "had to get her out of the company one way or the other."

Additionally, plaintiff alleged that Myers arranged for her to fail the polygraph examination even before she was due to arrive at Franklin Security's office to take the test. She points out that she did not even take the test on which her termination was based and asserts that other Shore Stop employees who failed polygraph examinations were not discharged and were, in some instances, promoted.

In a count designated "Fraud," plaintiff asserted that Myers represented to her that she could remain in her employment if she consented to administration of the test, even though Myers knew at the time this assurance was given that it was false. She asserts that Myers intended to provide the employer with false and "pretextual" grounds for discharging plaintiff. This was to prevent her from obtaining unemployment benefits through the Virginia Employment Commission "which Defendant Shore Stop would be obligated to pay if Plaintiff were . . . fired without cause." Plaintiff asserted that Cagle passed relevant portions of the test about "her" identity but failed questions about "her" purported honesty. This fact, plaintiff alleged, provides ample evidence that Myers' representations were known to him to be false when made.

In a count labelled "Intentional Infliction of Emotional Distress," plaintiff claimed Shore Stop's conduct offended "standards of decency" and was malicious.

In a negligence count, plaintiff alleged that reasonable care was not exercised in the administration of the polygraph examination. She further asserted that defendants were negligent in the evaluation of her job performance.

In a count labelled "Tortious Interference With Contractual Relations," plaintiff charged that Shore Stop and Franklin Security, through its agents and servants, unlawfully conspired and interfered with her employment relations with her employer. She asserted these fraudulent and conspiratorial actions were the proximate cause of her termination.

The trial judge stated his reasons for sustaining the demurrers in a letter opinion. In striking the count for breach of contract, the court said that plaintiff's admissions of deceiving the employer by sending an impersonator to take the test established dishonesty amounting to unsatisfactory job performance. Thus, the judge said, sufficient grounds existed as a matter of law for termination under the contract. The court applied the same reasoning to the count for wrongful discharge.

Regarding the remaining counts, the court ruled that "by her admitted deceit, plaintiff has forfeited any standing to complain of the manner in which the polygraph test was administered or evaluated." Similarly, the court stated, plaintiff "has admitted" that her discharge did not result from any wrongful conduct of defendants, but was "a result of a faked polygraph test which she did not take as required while conspiring with others to deceive the company in this respect."

On appeal, the employee alludes at times to all counts of the motion for judgment. Nevertheless, in her questions presented and in her argument, she concentrates on the alleged error of the trial court in striking the counts of breach of contract and fraud as to Shore Stop, and in striking the count of tortious interference with contractual relations as to all defendants. Likewise, we will focus on these three counts only; the factual allegations presented to support the other counts actually overlap and are subsumed in the facts asserted to support the three counts.

The employee argues that her employment was not terminable at will and asserts that she was hired for a definite term to be discharged only for just cause, citing *Miller* v. *SEVAMP, Inc.*, 234 Va. 462, 362 S.E.2d 915 (1987), and *Norfolk Southern Ry. Co.* v. *Harris*, 190 Va. 966, 59 S.E.2d 110 (1950). The employer responds by saying that even if the employee "had a just cause employment contract she can not impose liability on Shore Stop because her conduct justifies her dismissal." The employer relies on the following statement from *Crescent Horse-Shoe and Iron Co.* v. *Eynon*, 95 Va. 151, 158, 27 S.E. 935, 936 (1897):

> "It is well settled that where a sufficient cause exists for the discharge of a servant, although not the inducing motive to the discharge, or even known to the master, it will justify the discharge. The law only requires that there should be an actual breach of the express or implied conditions of the con-

tract in order to justify the discharge, and, if such cause in fact exists, the master may avail himself of such breach in defence of an action brought against him for damages resulting from an alleged wrongful dismissal."

*Accord Spotswood Arms Corp.* v. *Este*, 147 Va. 1047, 1065-66, 133 S.E. 570, 576 (1926).

■ The foregoing rule, however, is inapplicable here. If the plaintiff can establish a contract of employment for a fixed term, the facts alleged show that the breach of contract was by the employer and that this breach preceded the employee's decision to use an impostor to take the polygraph examination. The employee arranged for Cagle to take the test only after the employee discovered that the employer had rigged the test to assure the employee failed it, in order to use the failure as a pretext for the discharge. At the time the employee acted deceptively, the employer already had placed the employee in the position where she would lose her job, without regard to whether termination was proper based on just cause. Thus, we hold that the trial court erred in striking the breach of contract count.

■ Next, the employee argues she has stated a cause of action in fraud. The elements of actual fraud, to be proved by clear and convincing evidence, are: a false representation of a material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage to the misled party. *Winn* v. *Aleda Construction Co.*, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984).

The plaintiff contends the allegations of fraud are sufficient because she has alleged that the employer, through Myers, represented to her that she could retain her employment if she consented to the polygraph examination, when Myers knew those assurances were false. She says that through this statement Myers implied the test would be fair when, in fact, he never planned to have a fair test administered, actually intending to have her fail it.

The trial court decided the plaintiff "does not allege any misrepresentation of existing fact, but a mere promise for the future." On appeal, the employer does not adopt the trial court's reasoning on this issue. Instead, the employer contends there was no detrimental reliance by the employee upon the alleged misrepresentation.

 Ordinarily, in an action based on fraud, the moving party must aver the misrepresentation of present or pre-existing facts; the action usually may not be predicated on unfulfilled promises or statements about future events. *Sea-Land Service, Inc.* v. *O'Neal*, 224 Va. 343, 351, 297 S.E.2d 647, 651 (1982). However, there is a recognized exception to that rule. An action in tort for fraud and deceit may be predicated in some cases on promises made with a present intention not to perform them; the gist of the fraud in such a situation is the fraudulent intent. *Id.*, 297 S.E.2d at 651. *Accord Boykin* v. *Hermitage Realty*, 234 Va. 26, 29, 360 S.E.2d 177, 178-79 (1987); *Colonial Ford* v. *Schneider*, 228 Va. 671, 677, 325 S.E.2d 91, 94 (1985). This is such a case. The plaintiff has alleged that Myers promised to permit the plaintiff to retain her job if she took the test, a promise that he did not intend to perform at the time it was made. Thus, contrary to the trial court's view, Myers' promise was a misrepresentation of a present fact, and if made to induce the employee to act to her detriment, is actionable as an actual fraud.

And, contrary to the employer's argument, the plaintiff sufficiently has alleged detrimental reliance. The employer's main contention on this issue is that the plaintiff did not rely on Myers' representation because she did not take the test but had an impostor take it. The employer says that, after the employee was notified of the "set up," she had the option of resubmitting her resignation and refusing the test. Thus, the employer contends, "her dismissal because of dishonesty" was the result of the plaintiff's voluntary choice made with full knowledge of the employer's deceit and was not a detriment induced by reliance on Myers' representation.

 But, as the employee points out, the fraud had become complete two days before she learned of the "set up." Based upon Myers' representation, she agreed to take the test. It was not until hours before the test that the plaintiff learned of the employer's scheme. At that moment, she was confronted with choosing among several equally unsatisfactory courses of action. She could take the test, fail it, and lose her job. She could resign her position and suffer the stigma of quitting on the very day she was scheduled to be tested concerning a charge of theft against her. She could attempt to uncover and prove the fraud. She chose the latter. At the time she discovered the employer's deceit, she already had relied to her detriment on the misrepresentations because she

agreed to take the test. A fact finder should be permitted to decide whether under the circumstances she should have retreated from this decision. Therefore, we hold the trial court erred in deciding that the fraud count was insufficient in law.

Finally, the employee argues she has stated a cause of action for tortious interference with contractual relations. She points out that she has alleged a contract with Shore Stop not to terminate her without just cause. She points out that she also has alleged that Shore Stop and Franklin Security, an independent third party, conspired to rig the examination so that she would fail it, thereby furnishing Shore Stop with a pretext to discharge her. We agree with the employee.

These factual recitations bring this case within the rule of *Worrie v. Boze*, 198 Va. 533, 95 S.E.2d 192 (1956). There, the Court decided that an action in tort exists against those who conspire to induce a breach of contract and that such rule will be applied to hold one liable, along with an independent third party, for conspiring to breach his own contract. *Id.* at 540-41, 95 S.E.2d at 198-99. Consequently, we hold the trial court erred in striking that count of the motion for judgment.

In conclusion, we will address the trial court's observation that "by her admitted deceit, plaintiff has forfeited any standing to complain" about her discharge. The respective parties treat this as a ruling that plaintiff is estopped to proceed with her action. The defense of estoppel does not apply when, as here, the plaintiff's conduct was induced by defendants' own acts and false representations. *Luck Construction Co. v. Russell County*, 115 Va. 335, 342, 79 S.E. 393, 395 (1913). The plaintiff did not enlist Cagle to take the test until after she discovered the defendants' wrongful conduct. Thus, defendants' conduct induced plaintiff's action and the plaintiff has not forfeited "standing" to sue.

For these reasons, we will reverse, in part, the order dismissing the motion for judgment. We will remand the case for further proceedings on the counts for breach of contract and fraud against defendants Shore Stop and Kishlar, and on the count for tortious

interference with contractual relations against all defendants. The trial court's order of dismissal will be affirmed in all other respects.

*Affirmed in part,*
*reversed in part,*
*and remanded.*