966 F.2d 1441
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Aram A. ARABIAN, JR., Plaintiff-Appellee,
v.
James Morgan BOWEN, Defendant-Appellant,
and
CAPVEST ENERGY CORPORATION, Defendant.
 No. 91-1720.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: May 21, 1992
Decided: July 7, 1992
 
 James Morgan Bowen, Appellant Pro Se.
 John Peter Connolly, Alexandria, Virginia, for Appellee.
 Before RUSSELL, SPROUSE, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Aram Arabian brought this action against James Bowen alleging that Bowen recommended Arabian invest in an oil and gas drilling venture.1 He claimed that he wired $25,000 to Bowen but instructed Bowen not to use the money until he (Arabian) had an opportunity to review a prospectus and other documents regarding the investment and had signed documentation agreeing to the use of his money. Bowen used the money to start a new business, and the business was not a success. Arabian's complaint alleged violations of federal and Virginia securities law, as well as common law fraud and breach of fiduciary duty claims. The action was tried to a jury, and the jury found for Arabian on all counts, awarding him $21,700 in compensatory damages and $7500 in punitive damages. The district court denied Bowen's motion for judgment notwithstanding the verdict and granted Arabian's motion for costs and attorney's fees. Bowen appealed. We affirm.
 
 Venue
 
 2
 The first issue on appeal is the propriety of the district court's refusal to transfer the action to Colorado, Bowen's state of residence at the time of the action. Bowen moved before the district court for transfer of the action under 28 U.S.C. § 1404(a) (1988) because he and his witnesses, along with many of the relevant documents, were in Colorado. The plaintiff's choice of venue is accorded great weight in a motion for transfer under § 1404(a). Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981). The defendant bears a heavy burden of showing that the balance of interests weighs strongly in his favor in a motion to transfer. Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947). The district court's order will not be overturned absent an abuse of discretion. Van Dusen v. Barrack, 376 U.S. 612 (1964).
 
 
 3
 In this case, although Bowen's witnesses and many of his documents were in Colorado, Arabian resided in Virginia, and much of his documentary evidence was in Virginia. Further, Arabian had no witnesses, other than Bowen himself, who resided in Colorado. In addition, one of the securities claims and the two common law claims (fraud, breach of fiduciary duty) were governed by Virginia law; the familiarity of the district court with the law to be applied is also a factor to be considered in deciding a § 1404(a) motion. Van Dusen, 376 U.S. at 643. Because Bowen has submitted no more compelling reason for questioning the propriety of the district court's order than the number of witnesses he wished to call, the district court did not abuse its discretion in refusing to transfer the action.
 
 Statute of Limitations
 
 4
 Bowen contends on appeal that the federal securities claim brought under 15 U.S.C. § 771(2) (1988) and the common law fraud claim were both barred by the statute of limitations. As Bowen noted, these claims are all governed by one-year statutes of limitations. 15 U.S.C. § 77m (1988); Va. Code Ann. § 8.01-248 (Michie 1984). However, both of these statutes of limitations begin to run only when the plaintiff discovers or reasonably should have discovered the actions of the defendant giving rise to the claims. 15 U.S.C. § 77m; Va. Code Ann. § 8.01-249(1) (Michie Supp. 1991).[2] Arabian claims that he first suspected that Bowen used his money without his permission when he received a note from Bowen purporting to be Arabian's acknowledgement that he had loaned $25,000 to Bowen. He received the note on January 25, 1989; the action was filed on January 16, 1990. Bowen claims that Arabian should have been held to know that his money was being used to fund the venture from the outset. However, such a finding would clearly be contrary to the jury's verdict; the premise of Arabian's action was that he did not know of or approve Bowen's use of his money to fund the new business. Therefore, the district court fairly concluded that Arabian filed the action within one year of the date he knew or should have known of Bowen's use of his money.
 
 
 5
 Bowen next argues that even if Arabian first knew of his use of the money in January 1989, the action should still be barred by the statute of limitations because although Arabian filed the action within the limitations period, Bowen was not actually served until after the expiration of the limitations period. Arabian attempted to serve Bowen by mail on January 16, 1990, as permitted by Fed. R. Civ. P. 4(c)(2)(C)(ii). However, service by mail was not acknowledged. Service was then mailed by the Secretary of the Commonwealth of Virginia to Bowen's last known address (which was also his address of record for the duration of this action) on March 4, 1990, pursuant to Fed. R. Civ. P. 4(d)(1) and Va. Code Ann. § 8.01-329 (Michie Supp. 1991). Bowen still did not file an answer, though he admitted that he learned of the filing of the action on March 1, 1990. The district court entered a default judgment against Bowen on April 23, 1990; on July 16, 1990, Bowen moved to vacate the default judgment, and his motion was granted. Bowen claims that the statute of limitations should not have been tolled by Arabian's filing of the action and attempt to serve by mail.
 
 
 6
 Rule 3, Fed. R. Civ. P., provides that an action"is commenced by filing a complaint with the court." Similarly, the Virginia Supreme Court rule, which applies to the state law claim, provides that an action is commenced upon the filing of a motion for judgment. Va. Sup. Ct. R. 3.3. The statutes of limitations applicable to Arabian's claims require only that actions be "brought within one year" after accrual of the causes of action. 15 U.S.C. § 77m; Va. Code Ann. § 8.01-248. An action is commenced for statute of limitations purposes when the complaint is filed if service of process is accomplished within 120 days, as required by Fed. R. Civ. P. 4(j), or one year, under Va. Sup. Ct. R. 3.3, and the plaintiff has exercised due diligence in the service of process. West v. Conrail, 481 U.S. 35, 39 (1987) (applying borrowed state statute of limitations and federal service of process and commencement of action rules); Pacific Employers Ins. Co. v. Parry Navigation Co., 195 F.2d 372, 373 (5th Cir. 1952) (limitations period tolled when action filed one day before expiration of limitations period and plaintiff had bona fide intention and exercised due diligence in attempting to serve process); Quann v. Whitegate-Edgewater, 112 F.R.D. 649 (D. Md. 1986) (lack of due diligence in effecting service of process warranted dismissal under Fed. R. Civ. P. 4(j) even though subsequent action would be barred by statute of limitations); see 4 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1056 (1987).
 
 
 7
 In this case, Bowen learned of the filing of the action on March 1, 1990, less than 120 days after the action was filed. He does not allege that Arabian exercised less than due diligence in serving process. Consequently, the filing of the action and Arabian's diligence in attempting to effectuate service as provided under Fed. R. Civ. P. 4(c)(2)(C)(ii) and Fed. R. Civ. P. 4(d)(1) tolled the statute of limitations.
 
 Admission of Evidence
 
 8
 Bowen claims that evidence of Arabian's previous investment in Fannie Mae securities at Bowen's recommendation, on which Arabian lost money, was improperly allowed into evidence. Specifically, he contends that admission of Arabian's testimony regarding his loss on the investment and his subsequent recovery from Bowen was unduly prejudicial and should have been excluded under Fed. R. Evid. 403. The district court allowed the evidence in to establish intent on the 15 U.S.C. § 78j(b)/rule 10b-5 claim. The testimony in fact showed that Arabian was a conservative, cautious investor, and that he did not want to risk his money in a speculative venture. Bowen had led him to believe that the Fannie Mae investment was safe, yet Arabian lost money on that investment. Further, Arabian did not know about the loss on the Fannie Mae investment until December 1988, and that loss led him to question Bowen about what Bowen was doing with his $25,000, and eventually to discover that Bowen had spent that money without his permission. Although this evidence was certainly prejudicial, it was also probative of Bowen's intent regarding Arabian's money, as well as Arabian's state of mind regarding his investments. Therefore, the district court properly concluded that the prejudice did not outweigh the probative value of the evidence.
 
 Securities Claims
 
 9
 Bowen also claims that there was not enough evidence to go to the jury on any of the counts. He first asserts that no CapVest securities were ever sold to Arabian or anyone else. Consequently, he alleges, Arabian's claims under section 12(2) of the Securities Act of 1933 (15 U.S.C. § 771); section 10b and rule 10b-5 of the Securities Act of 1934 (15 U.S.C. § 78j(b), 15 C.F.R. § 240.10b-5); and Va. Code Ann. § 13.1-502 (Michie 1989), should have been dismissed as a matter of law without going to the jury.
 
 
 10
 Bowen misreads the applicable statutory sections. Each of these claims must be based on a misrepresentation of a material fact by any person who offers or sells a security, or in connection with the sale of such a security. 15 U.S.C. § 771 (providing for civil liability for anyone who "offers or sells a security" by means of an untrue statement communicated through the mail or over the telephone); 17 C.F.R. § 240.10b-5 (making it unlawful to make untrue statement or engage in fraud "in connection with the purchase or sale of any security"); Va. Code Ann. § 13.1-502 (making it unlawful to use untrue statements or to employ a scheme to defraud "in the offer or sale of any securities"). Further, the definition of a security, under both federal and Virginia securities law, includes a note or evidence of indebtedness. 15 U.S.C. § 77b(1) (1988); 15 U.S.C.s 78(c)(10) (1988); Va. Code Ann. § 13.1-501 (Michie Supp. 1991).
 
 
 11
 Bowen asserts that Arabian loaned him the money to start up the new business, and he used the money for that purpose. Arabian claims that Bowen misrepresented the purpose for which his money was to be used; specifically, he claims that Bowen told him that the money would be used, upon receipt of Arabian's permission, for the purchase of securities. Arabian's testimony that the money was used for a purpose other than that for which he gave permission was sufficient to state a claim of misrepresentation in connection with the offer or sale of securities for purposes of withstanding a motion for a directed verdict, whether the money was actually to be used as loan to start the business or for the purchase of shares of the new business.[3]
 
 
 12
 Further, the evidence was sufficient to support the jury's verdict on these claims. The elements of a § 771 claim are (1) that the defendant made a false or misleading statement or omitted a material fact; (2) the plaintiff did not know of the untruth of the defendant's statement or know of the omission; and (3) the defendant knew or should have known, through the exercise of due diligence, of the omission or the untruth of the statement. Cook v. Avien, Inc., 573 F.2d 685 (1st Cir. 1978) (citing Alton Box Board Co. v. Goldman, Sachs & Co., 560 F.2d 916 (8th Cir. 1977)). Arabian testified that Bowen told him his money was to be used for the purchase of shares in the company, and that it would not be used until Arabian signed documents consenting to the use of the money. Arabian did not sign any documents agreeing for the money to be used to purchase those shares; further, he did not sign a loan agreement. Bowen said the money would be used to purchase shares in the venture, but the money was actually used, without Arabian's consent, to fund a new business. The jury could fairly have determined from the testimony of Arabian, and from the credibility it assigned to Bowen and his witnesses, that the elements of a § 771 claim were established by a preponderance of the evidence. See Herman & MacLean v. Huddleston, 459 U.S. 375, 387-90 (1983) (private action brought under federal securities fraud statutes must be established by a preponderance of the evidence); United States v. Arrington, 719 F.2d 701, 704 (4th Cir. 1983) (credibility of witnesses to be determined by jury; credibility not reviewable on appeal for purpose of determining sufficiency of evidence to support verdict), cert. denied, 465 U.S. 1028 (1984).
 
 
 13
 The elements of a § 78j(b)/rule 10b-5 claim are (1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which the plaintiff relied, (5) that proximately caused the plaintiff's injury. Ross v. Bank South, N.A., 885 F.2d 723, 728 (11th Cir. 1989), cert. denied, 495 U.S. 905 (1990). The purchaser of a security may not recover if he had constructive knowledge of the material misstatement of fact; further, to collect damages in a regulation 10b-5 action the purchaser must show that his loss was caused by the material misstatement of fact. Bennett v. United States Trust Co., 770 F.2d 308, 313 (2d Cir. 1985) (loss causation), cert. denied, 474 U.S. 1058 (1986); Zobrist v. Coal-X, Inc., 708 F.2d 1511, 1515-16 (10th Cir. 1983) (constructive knowledge); see also Casella v. Webb, 883 F.2d 805, 808-09, nn. 8, 9 (9th Cir. 1989) (comparing elements of § 771 claims and rule 10b-5 claims). All of these elements were proven by a preponderance of the evidence in this case. First, as noted above, the jury could reasonably have found that Bowen told Arabian that his money would be used to purchase stock, when in fact it was used, without Arabian's permission, to start the new venture. Further, the jury could fairly have concluded that Bowen knew what he was going to do with the money when he obtained it from Arabian. Arabian certainly relied on Bowen's statements when he wired the money, and he would not have suffered a loss had he not sent the money to Bowen. Arabian's testimony also supports a finding that he did not know of Bowen's misstatement regarding the intended use of the money. Therefore, the jury's verdict on this count was supported by the evidence.
 
 
 14
 Finally, Va. Code Ann. § 13.1-502 is virtually identical to rule 10b5, so under the analysis above the jury's verdict on that count was supported by a preponderance of the evidence.
 
 Fraud and Breach of Fiduciary Duty Claims
 
 15
 Bowen also contends that the common law fraud claim and the breach of fiduciary duty claim should not have gone to the jury. His contention regarding the fraud claim was that Arabian claimed only to have discussed the monetary arrangements with Bowen, and not with two of Bowen's witnesses who were also involved in formation of the venture. He implies that only a fool would have discussed the investment strictly with Bowen when there were other sources of information available to him, and that because Arabian is not a fool he should not be believed when he asserts he relied solely on Bowen. However, as Bowen admits, one of the other witnesses overheard conversations between Bowen and Arabian, but did not speak directly with Arabian; further, though the other witness did testify that she sent a loan agreement to Arabian and that she confirmed he received it, she did not claim to have discussed the use of the money with Arabian. It is fair to conclude that since Bowen was Arabian's friend and stockbroker, there was nothing unusual about him discussing these matters only with Bowen. While it may have been"common knowledge in the CapVest office that [Arabian's] funds were to be used to fund the business," (Appellant's informal brief, p. 5), there is no basis for concluding, from the testimony or other materials in the record, that Arabian discussed this matter with anyone except Bowen, or that he knew more than Bowen told him.
 
 
 16
 Arabian's allegation of common law fraud was properly referred to the jury. Further, the evidence was sufficient to support the jury's verdict on this count. The elements of fraud in Virginia are (1) a false representation by the defendant, (2) of a material fact, (3) made knowingly and intentionally, (4) with intent to mislead, (5) upon which the plaintiff relied, (6) resulting in injury to the plaintiff. Diaz Vicente v. Obenauer, 736 F. Supp. 679, 690 (E.D. Va. 1990); Elliott v. Shore Stop, Inc., 384 S.E.2d 752 (Va. 1989). Further, a fraud claim may be predicated on a promise to perform with a present intention not to perform. Elliott, 384 S.E.2d at 756. The elements of a state fraud claim are essentially the same as those necessary to establish a claim under rule 10b-5, with one major exception: fraud must be proved by clear and convincing evidence. Elliott, 384 S.E.2d at 756.
 
 
 17
 Although the burden of proof in an action alleging fraud is higher than that in a rule 10b-5 case, that burden has been met here. It is fair to conclude from the jury's verdict that it found Arabian's testimony more credible than Bowen's. According to Arabian's testimony, Bowen told him that he would not use the money until he had Arabian's written permission to do so, and he used the money without that written permission. Bowen does not deny that he intended all along to use the money to fund the new business. Further, Arabian relied on Bowen's promise when he sent the money, and his loss was proximately caused by his reliance on Bowen's representation that the money would not be spent without his permission. Further, Bowen's present intent to spend the money contrary to his representation to Arabian is sufficient to establish intent to mislead. Diaz Vicente, 736 F. Supp. at 690. We hold that there was clear and convincing evidence establishing fraud to support the jury's verdict.
 
 
 18
 With regard to the breach of fiduciary duty claim, Bowen contends that there was no evidence presented to the jury from which it could have inferred that there was a fiduciary relationship that had been breached. Both Bowen and Arabian testified that the two had been good friends for a number of years prior to their financial dealings. Further, to Arabian's knowledge, Bowen was a licensed stockbroker and an attorney.[4] A fiduciary relationship exists when "special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." Allen Realty Corp. v. Holbert, 318 S.E.2d 592, 595 (Va. 1984) (quoting H-B Partnership v. Wimmer, 257 S.E.2d 770, 773 (Va. 1979)). The fiduciary must tell his principal of any fact which would affect the principal's decision. Allen Realty, 318 S.E.2d at 595.
 
 
 19
 Virginia courts have held that someone with whom money is entrusted is in a fiduciary position. Glass v. Glass, 321 S.E.2d 69 (Va. 1984) (directors of a corporation); Allen Realty, 318 S.E.2d at 595 (accountant); Burruss v. Green Auction & Realty Co., 319 S.E.2d 725 (Va. 1984) (joint venturer); Owen v. Shelton, 277 S.E.2d 189, 192 (Va. 1981) (real estate broker). Bowen was entrusted with Arabian's money, and he did not inform Arabian of the use to which the money was going to be put; further, he used the money without Arabian's permission. This established a breach of fiduciary duty, so the claim was properly before the jury and its verdict was supported by the evidence.
 
 Punitive Damages
 
 20
 Bowen contends that the jury's award of punitive damages should have been overturned because he was not enriched by his conduct, and that conduct was not wanton, oppressive, or malicious. Sit-Set, A.G. v. Universal Jet Exch., Inc., 747 F.2d 921, 928 (4th Cir. 1984); Jordan v. Sauve, 247 S.E.2d 739, 741-42 (Va. 1978). The evidence before the jury contradicts Bowen's contention. First, though he may not have had any of Bowen's money after the venture fell through, he was able to use that money to try to establish a business from which he would have profited. Further, the jury could reasonably have concluded, from Arabian's evidence and all of the inferences to be drawn from it, that Bowen's conduct was wanton or malicious. Jordan, 247 S.E.2d at 741-42. Therefore, the district court did not err in refusing to overturn the jury's award of punitive damages.
 
 Conclusion
 
 21
 We affirm the district court's judgment on the jury's verdict and the court's denial of Bowen's motion for judgment notwithstanding the verdict. We also affirm the district court's assessment of costs and attorney's fees because the district court complied with the methods set forth in Va. Code Ann. § 13.1-522 (Michie Supp. 1991), when assessing costs and fees. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not significantly aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 The money was originally to be invested in Petroleum Ventures, Inc. However, when that venture did not work out, the money was to be invested in CapVest Energy Corp. The money was spent in the formation of CapVest, but there was not sufficient investor interest in the business, so no oil or gas drilling projects ever came to fruition
 
 
 [2]
 Although Bowen does not claim on appeal that the rule 10b-5 claim, 15 U.S.C. § 78j(b) (1988) and 17 C.F.R. § 240.10b-5 (1991), would be barred by a statute of limitations, that section is also governed by a one-year statute of limitations; the statute begins to run when the plaintiff discovered or, by exercise of due diligence should have discovered, the violation. See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 59 U.S.L.W. 4688 (U.S. 1991)
 
 
 [3]
 Most securities fraud cases involve misstatements or omissions about the safety of the investment or the rate of return to be expected, rather than about how the plaintiff's money will actually be used. However, as this Court has observed, "[f]ederal securities laws enacted to avoid frauds must be construed flexibly to achieve their remedial purposes." Malamphy v. Real-Tex Enters., 527 F.2d 978, 980 (4th Cir. 1975) (citing Affiliated Ute Citizens v. United States, 406 U.S. 128 (1972))
 
 
 [4]
 Bowen contends that he was not licensed as an attorney at the time of the events at issue, though he had been licensed in the past. Further, he contends that although he did have a broker's license, he was not affiliated with a brokerage house at the time in question, so his license was not effective. He does not, however, seriously dispute Arabian's belief that he was licensed as both a stockbroker and an attorney