## CIRCUIT COURT OF THE CITY OF RICHMOND

Virginia Community Action
Re-Entry Systems, Inc.

v.

Bruce C. Morris,
Director of the Department of
Criminal Justice Services, et al.

September 16, 1996

Case No. HH-599-1

BY JUDGE MELVIN R. HUGHES, JR.

This case is before the court on a demurrer and motion to dismiss the plaintiff's motion for declaratory judgment. For purposes of demurrer, the court will take the facts alleged as given to determine their legal sufficiency. *Elliott v. Shore Stop*, 238 Va. 237, 239 (1989).

The allegations made in the Motion For Declaratory Judgment can be summarized as follows.

On December 19, 1995, Governor Allen submitted the budget bill to the Virginia General Assembly proposing appropriations concerning the 1997-1998 Budget. In the proposal, Governor Allen included a $1,491,369.00 allotment to the Department of Corrections for pre-release and post-incarceration services.

Since 1987, the budgets, as adopted by the General Assembly, have included money for pre-release and post-incarceration services. The distributions of these funds has been under the control of the Department of Criminal Justice Services (DCJS). Since 1987 plaintiff, Virginia Community Action Re-Entry Systems, Inc. (Virginia Cares), has received grants from DCJS under authorization in each budget each year to conduct pre-

release and post incarceration programs. However, under Governor Allen's proposal, no money was earmarked for distribution to any person or agency.

During the 1996 session, the General Assembly amended Governor Allen's proposed budget to channel the funds to DCJS, to add an additional $300,000.00 per year (bringing the total dedicated to these purposes to $1,791,369.00 per year), and to authorize the granting of $1,605,229.00 per year to Virginia Cares. The language employed was as follows:

> Out of this sum, the Department is authorized to award grants to the following organization: Virginia Community Action Re-Entry Systems, Inc., $1,605,229.00 the first year and $1,605,229.00 the second year.

On April 10, 1996, Governor Allen vetoed a portion of this allocation. The governor removed the language quoted above, leaving only the first sentence of the paragraph, which allotted the money to the DCJS for the purpose of pre-release and post incarceration services. At a subsequent veto session, the General Assembly was unable to override the veto.

Virginia Cares filed this action challenging the constitutionality of the Governor's exercise of his veto power. The defendants are the Director of the Department of Criminal Justice Services, the Comptroller of the Commonwealth of Virginia, the Treasurer of the Commonwealth of Virginia, and the Secretary of Public Safety. Virginia Cares alleges that the governor's action violates Art. V, § 6, of the Constitution of Virginia (1971), as amended because, it contends, the governor is only permitted to veto an item or items of an appropriation, not a part or portion of an item.

In their demurrer, the defendants contend that the proposed statute, had it been enacted, would not create a right in Virginia Cares as it was nothing more than advisory to the DCJS. Thus, Virginia Cares does not enjoy a right sufficient for declaratory relief because any entitlement to grant monies is tenuous and uncertain. Alternatively, the defendants argue that if the proposed statute is construed as being mandatory in nature, it would be unconstitutional as special legislation under Article IV, § 14(18), of the Constitution of Virginia (1971). In either event, the defendants argue, Virginia Cares cannot prevail. The court agrees with the defendants that Virginia Cares does not enjoy a sufficient right in the matter and the demurrer is sustained on this basis. For this reason, it is unnecessary to determine whether or not the appropriation is special legislation.

"The point of standing is to ensure that the person who asserts a position has a substantial legal right to do so and that his rights will be affected by the disposition of the case." *Cupp v. Bd. of Supervisors*, 227 Va. 580, 589 (1984). The *Cupp* case goes on to hold that whether a party has standing is based on whether he has a sufficient interest in the subject matter of the case to make the parties actual adversaries and ensure that the issues will be fully developed. *Id.* (citing *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59 (1978)).

Virginia Cares misses the principle set in the *Cupp* holding. In *Cupp* the court focused on whether the plaintiff had a personal stake in the outcome. Here, the question under the circumstances is whether Virginia Cares has any greater right than any other potential applicant for the funds to actually receive the funds. For the reasons that follow DCJS could, without violating this statute, decide not to pay out the funds at all. As such, if this court were to declare the veto unconstitutional, it would not affect the rights of Virginia Cares. With or without the provision in the budget, the plaintiff has no direct right to the money. The words of the statute are, therefore going to control the nature of the provision. Here, the parties appropriately focus on the use of the word "authorized" mentioned in the appropriation.

"The word 'authorized' is ordinarily a permissive term . . . ." 82 C.J.S., *Statutes*, § 380(b) (1953) (citation omitted). "Authorize" is defined as: "To empower." William Statsky, *Legal Thesaurus/Dictionary* 75 (West 1986). It is associated with words such as: license, appoint, give permission, and allow. *Id.* Another source defines "authorize" as: "To empower; to give a right or authority to act . . . . To permit a thing to be done in the future." *Black's Law Dictionary* 133 (6th ed. 1990).

The other authorities agree. The word "authorize" and "authorized" is generally treated as directory. In fact, one source defines "authorize" as having "the connotation [of] being permissive rather than mandatory." *Ballentine's Law Dictionary* 112 (3d ed. 1969). The same source goes on to define "authorized" as "[a] word of permission." *Id.*

It is clear then, based on the general use of the word, that its plain meaning is permissive or directory. The authorities go further, however. In addressing the meaning of the use of the word in a statute, another source cites examples of its use, saying:

> Under an act which "authorizes" tax refund the making of refunds rests in the discretion of counties, and denial or refusal of refund is not reviewable by the courts [citation omitted].

> Under a statute which "authorized" county and school district officials to make an additional tax levy to care for deficit in sinking fund for payment of school district bonds, officials were not mandatorily directed to make such a levy [citation omitted].

4A *Words and Phrases* 607 (West 1969).

The authorities do refer to some limited instances and cases in which it has been found that the use of the word "authorized" was intended to have a mandatory affect. However, if the use of the word implies a command, it does so because of other words which "have been used to express that intention." *Ballentine's Law Dictionary* 112 (3d ed. 1969). So, the court must examine the other words used in conjunction with "authorized" to determine its meaning.

The provision reads: "[T]he Department is authorized to award grants to the following organization . . . ." The use of the word "award" is telling. The verb form of the word award is associated with words such as to conclude, to decide, and to determine. William Statsky, *Legal Thesaurus/Dictionary* 77 (West 1986). Clearly, there is a connotation of decision making power. As the defendants argue on brief, the use of the word grant likewise implies some discretion.

Examining the plain meaning of the words used in the proposed budgetary provision and looking to the authorities for guidance as to the legislative intent in choosing these words, the court finds that the provision is directory and not mandatory.

According to Va. Code Ann. § 8.01-184 (Michie 1992 & Supp. 1996), governing declaratory judgments, review is limited to "cases of actual controversy." The statute describes these as instances of "actual antagonistic assertion and denial of right." *Id.* As the Virginia Supreme Court held, "the intent of the declaratory judgment statutes is not to give parties greater rights than those which they previously possessed but to permit the declaration of those rights before they mature." *Liberty Mutual Ins. Co. v. Bishop*, 211 Va. 414, 421 (1970).

Another case held that "[t]he controversy must be one that is justiciable, that is, where specific adverse claims, based upon present rather than future or speculative facts, are ripe for judicial adjustment." *City of Fairfax v. Shanklin*, 205 Va. 227, 229 (1964). Therefore, the plaintiff must show in his pleadings that he has a present right that is being threatened or denied in order to maintain an action for declaratory relief.

The plaintiff argues that it has met this burden as it has asserted a right to the money and it has been denied. However, as the defendant points out,

"a controversy is not created by taking a position and then challenging the government to dispute it." *Shanklin*, 205 Va. at 231. *See also Board of Supervisors of Fairfax County v. Southland Corp.*, 224 Va. 514, 520 (1982).

Here, Virginia Cares will only be able to claim a right to the money if the veto is found unconstitutional, and if the bill is passed with the provision in it, and if the Governor signs the provision into law, and if the DCJS grants the money to Virginia Cares, either after a bidding process or without one. Having all these barriers between Virginia Cares and its ability to claim a right to the funds makes this claim hypothetical and abstract. As such, Virginia Cares lack standing to maintain this action. *See Cupp*, 227 Va. at 590.

Having found that Virginia Cares would not have a right to the funds, even had the statute been enacted as proposed before the veto, it cannot claim a right in dispute. Since there is no actual controversy here, the action is not maintainable according to the present allegations.

For these reasons the demurrer is sustained. Plaintiff may plead over or stand on its pleading, in which event the case will be dismissed with prejudice. If plaintiff chooses to plead again, it may do so within ten days of September 16, 1996, and defendants will have ten days to respond.