## CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Howard Didier

    v.

Garla Didier

### Case No. (Civil) CL12-35

BY JUDGE JOHN W. BROWN

### April 26, 2012

In Court on April 18, 2012, the wife asked for *pendente lite* relief through the award of spousal support. The husband argued for denial of any spousal support to the wife other than that which was agreed to in a mediated agreement. That $1800 per month spousal support agreement was reflected in an order of the Chesapeake JDR Court on December 20, 2011. He also requested exclusive use and possession of the marital home due to wife's alleged hoarding tendencies and alleged threats which have made the home insufferable and contributed to the exacerbation of many of his health problems. Wife countered that even if the agreement for $1800 is valid, this Court still has jurisdiction to award further amounts of spousal support on a *pendente lite* basis, and she presented an income and expense sheet and spousal support calculation wherein she requests $2536 per month.

### Spousal Support

The issue before the Court is whether this mediated settlement, reduced to an Order of the Juvenile and Domestic Relations Court for the City of Chesapeake, prevents this Court from litigating the issue of spousal support.

"Each juvenile and domestic relations court shall have . . . exclusive original jurisdiction . . . over all cases, matters, and proceedings involving . . . any person who seeks spousal support after having separated from his [or her] spouse," and "[a] decision under this subdivision shall not be res

judicata in any subsequent action for spousal support in a circuit court." *See* Va. Code § 16.1-241.

As one other Circuit Court points out, however, a case involving an agreement of the parties that is reduced to a court order does not fall under the purview of this statute because the entry of a consent decree by a Juvenile and Domestic Relations Court is not a *decision*; the Court simply accepts the agreed resolution of the issue and orders the parties to comply with it. *See Paul v. Paul*, 77 Va. Cir. 124 (Salem, 2008) *(citing Newman v. Newman*, 42 Va. App. 557, 562-64 (2004)).

Furthermore, Va. Code § 20-109(C) states that:

> In suits for divorce, annulment, and separate maintenance and in proceedings arising under subdivision A 3 or subsection L of § 16.1-241, if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, *no decree or order directing the payment of support and maintenance for the spouse,* suit money, or counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered *except in accordance with that stipulation or contract.*

(Emphasis added.) *See also Orlandi v. Orlandi*, 23 Va. App. 21, 26 (1996) (recognizing that "[a] consent decree is a contract or agreement between the parties to the suit, *entered of record in the cause with the consent of the court,* and is binding unless secured by fraud or mistake." *(citing Durrett v. Durrett*, 204 Va. 59, 63 (1963) (emphasis added) *(quoting Barnes v. American Fertilizer Co.*, 144 Va. 692, 720 (1925))))).

Should a spousal support agreement in juvenile court be upheld in this new action (a divorce) in a different Court? The Court finds that, if the parties had such an agreement, reduced to writing and signed by both parties and one party moved to introduce it into evidence in a *pendente lite* hearing of a divorce action, the Court would have to accept the agreement. *See* Virginia Code § 20-109.

The Court finds no difference that this was a negotiated settlement through a mediator as opposed to an agreement reached by the parties' counsel or by the parties themselves. The Court finds that such a mediated agreement amounts to a "stipulation or contract" for purposes of § 20-109. The language of the statute is clear and the Court should accept its plain meaning. *Pendente lite* relief, though not a permanent award, would still be a decree or order to pay a certain amount in spousal support, and any deviation made by this Court would not be in accordance with the contract and would violate § 20-109(C). *See Paul, supra.* This reading of § 20-109(C) is also in accord with Va. Code § 20-155, which subjects marital

agreements to the same standards as premarital agreements, including the requirement that, "after marriage, [an agreement] may be amended or revoked only by a written agreement singed by the parties." Therefore, the agreement for $1800 per month is granted to the wife as spousal support.

### Exclusive Use and Possession of Marital Residence

Since both parties are currently living in the marital home, the husband must carry the burden of proving "reasonable apprehension of physical harm to that party by such party's family or household member as that term is defined in § 16.1-228" in order for the Court to "enter an order excluding that party's family or household member from the jointly owned or jointly rented family dwelling." *See* Va. Code § 20-103(B).

The husband has testified to his health issues and some threats that his wife has made, and the question is whether the wife's actions constitute "violence, force, or threat that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury" under § 16.1-228.

The testimony of the husband that the wife threatened to use a gun and to have someone come and "take him out" are clearly threats of a severe nature. Further, the wife's actions have contributed to the husband's reported declining health, increased medications, and panic attacks. They have also added to his existing hypertension and diabetes, conditions which formed part of his military disability determination. While the wife claims that the husband has also threatened her, the husband's testimony and Plaintiff's Exhibit # 2, showing the state of the house and the alleged "hoarding" of the wife, support the view that the husband has met the requirements of § 20-103(B) and § 16.1-228. The continued presence of the wife, her habits, and her threats are placing undue stress and contributing to the physical deterioration the 53 year-old husband. Therefore, the Court grants exclusive use and possession of the house to the husband.

The wife shall have thirty days to vacate the marital home. She will be able to take her separate property with her, and the Court hopes that the parties, through counsel, can agree to split the home's furnishings among themselves with such a split being valued and recorded.

### July 26, 2012

In Court on April 18, 2012, the wife asked for *pendente lite* relief through the award of spousal support. The husband argued for denial of any spousal support to the wife other than that which was agreed to in a mediated agreement. That $1800 per month spousal support agreement was reflected in an order of the Chesapeake JDR Court on December 20, 2011. He also requested exclusive use and possession of the marital home due to

wife's alleged hoarding tendencies and alleged threats which have made the home insufferable and contributed to the exacerbation of many of his health problems. Wife countered that, even if the agreement for $1800 is valid, this Court still has jurisdiction to award further amounts of spousal support on a *pendente lite* basis, and she presented an income and expense sheet and spousal support calculation wherein she requests $2536 per month.

The Court issued a letter opinion on April 26, 2012, finding that wife was bound to the $1800 per month spousal support agreement. Wife filed a motion to reconsider that decision based on fraud by the husband, and the Court heard arguments on May 8, 2012. During those arguments, it came to light that there might have been certain errors that crept into the mediation process. The Court invited the attorneys to submit briefs on the issue of mutual mistake of fact. Meanwhile, the Court vacated its previous decision of April 26, 2012, by Order dated May 9, 2012. Ms. Rosenblatt submitted her brief on May 18, 2012. Ms. Humphreys submitted her brief on June 1, 2012. After considering the evidence and arguments of counsel, the Court renders its decision below.

### Fraud

"In order to state a cause of action for fraud, a plaintiff must plead that there was 'a false representation of a material fact, made intentionally and knowingly, with intent to mislead'." *Sales v. Kecoughtan Hous. Co.*, 279 Va. 475, 481 (2010) (*quoting Elliott v. Shore Stop, Inc.*, 238 Va. 237, 244 (1989)). The plaintiff must also plead that he relied on that false representation and his reliance led to damages. *Id.* (*citing Elliott*, 238 Va. at 244 (1989)). In order to state a cause of action for *constructive fraud*, the plaintiff is only required to plead that the false representation was made innocently or negligently, while all other elements remain the same. *Id.* (*citing Prospect Dev. Co. v. Bershader*, 258 Va. 75, 86 (1999)). An action based on fraud may not be predicated on unfulfilled promises or statements about future events. *Id.* (*citing Prospect*, 258 Va. at 86 (1999)). Further, the statement that serves as the foundation for an action in fraud, either actual or constructive, must be a misrepresentation of an existing fact and not the expression of an opinion. *Id.* (*citing McMillion v. Dryvit Systems, Inc.*, 262 Va. 463, 471 (2001)).

Whether a statement is a statement of fact or a statement of opinion is determined on a case-by-case basis, "taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances." *Id.* (*citing Packard Norfolk, Inc. v. Miller*, 198 Va. 557, 562 (1956)).

In this case, there are two ways in which the mediated agreement is erroneous: (1) the mediator, contrary to law, used the husband's net income instead of his gross income before he plugged the income figures in the

standard spousal support formula, and (2) the mediator, contrary to law, excluded the husband's retirement disability pay of approximately $1800 per month as a part of the husband's income figure before he used it in the spousal support formula.

Only the error based on the husband's monthly disability retirement pay, however, was based on a communication by the husband during the mediation session. Both the husband and the wife testified that they failed to understand the difference between "gross" and "net" income. Therefore, neither party made representations of fact based on the distinction. Instead, they relied on the mediator to use the correct figure. Thus, the Court will not consider the "gross" versus "net" error until the section below on mutual mistake of fact.

The husband did, however, testify that he made representations about his retirement disability pay during the mediation session. He first testified that he stated that the disability pay did not come into play. He subsequently testified that he stated that the pay was "untouchable."

The Court must decide these statements were made with intent to mislead Ms. Didier. Mr. Didier testified that he spoke with a representative from an outside source and that individual told him that his disability retirement pay was not includable in a spousal support calculation. No supporting evidence of such a conversation or documentation supporting such a belief was produced, however. When Mr. Didier made his statements in the mediation session about his disability being untouchable, he testified that he believed this conclusion to be true. The Court declines to set aside the mediated agreement on the basis of actual fraud.

The Court now considers the argument to set aside the agreement on the basis of constructive fraud. The husband, wife, and mediator all provide a fairly consistent account of how the mediation session transpired. The husband provided his net income figure rather than the required gross income figure to Mr. Pulley, the mediator. Mrs. Didier did not provide any income figures for herself, since she had no income. Pulley added Mr. Didier's net income figure (excluding the disability) into the formula and arrived at the $1800 figure. In reality, the husband's gross income figure for purposes of this calculation is $8453 per month, not $6000.

It was at that point that the husband and wife started to have a back-and-forth exchange and negotiation over the final amount of spousal support. The mediator did not recall how the parties eventually ended up at $1800, but Mr. Didier testified that he wanted to pay less but Mrs. Didier requested the $1800. After going back and forth for a period of time, in a process that Mrs. Didier described as feeling like they were at a flea market, the parties eventually settled on the mediator's calculated $1800 per month.

While the wife did not provide any testimony to suggest that she asked questions about the husband's income or the figures that the mediator used in the formula, she testified that she did not know what the husband's

income was at the time she attended mediation. Furthermore, after the mediator used the formula and came up with $1800, while there is nothing in the record to suggest that the wife believed that this figure served as the ceiling in the bargaining process, she felt that was the amount to which she was entitled. Neither party presented evidence that she asked for more than $1800.

Taken in the light most favorable to the husband, the evidence supports the view that the husband had a clear misunderstanding about what should be included in his gross income figure. The Court finds that the husband's innocent, but wrongful, misrepresentations amount to constructive fraud. The wife relied on false misrepresentations of fact by the husband that his net income was his gross income and that based on information from another source, his disability income was "untouchable" for purposes of spousal support. There is no question that the wife relied on these representations, as she testified that she did not know what he earned at the time of the mediation. It was, from the evidence, her reliance on his stated income and the application of the formula to that stated income that led to the "agreement." Nor did the mediator, trained in the presentation of guidelines based on evidence of income, correct these errors.

### Mutual Mistake of Fact

An agreement may be remedied when there has been a mutual mistake of fact so that the agreement does not express the intent of the parties. *Gibbs v. Price*, 207 Va. 448, 449 (1966). Relief is granted in such circumstances only when the mistake has been proven by clear and convincing evidence satisfactory to the Court. *Id.* at 450.

In *Pigg v. Haley*, 224 Va. 113 (1982), the Court found that the parties to an agreement created the agreement based on a mutual mistake. *Id.* at 125. Even so, the court upheld the agreement because doubts had arisen as to the rights of the parties and they agreed to compromise and settle those doubts and because there was no "overreaching or unfair dealing on either side" in that process of compromise. *Id.* at 126.

In this case, there were two clear mutual mistakes of fact that stemmed from different sources. First, the parties were each mistaken as to whether "gross" income or "net" income should be used in the spousal support formula. That mistake stemmed from the parties' lack of understanding of and/or lack of familiarity with the terms "net" and "gross." Second, the parties were both mistaken about the exclusion of husband's monthly retirement disability pay in the formula. That mistake stemmed from a combination of faulty information that the husband received from an outside source and the wife's and the mediator's silent acquiescence to the accuracy of that information.

As the Court has already suggested above, no evidence was presented that the wife felt that she could go higher than the $1800 figure that resulted from the formula. She merely followed the facts as given by the husband to the mediator and acquiesced to the mediator's use of that faulty information in a recognized formula that some mediators, lawyers, and judges use in the state of Virginia. Ms. Didier did not ask for an amount over and above the formula calculation of $1800. A non-lawyer in front of a court-mandated mediator, a quasi-judicial officer, *see* Office of the Executive Secretary, Supreme Court of Virginia, *Guidelines for the Training and Certification of Court-Referred Mediators*, available at http://www.courts.state.va.us/courtadmin/aoc/djs/programs/drs/mediation/training/tom.pdf, was justified in relying on the husband's statement that this is the portion of his income to which she was entitled. If the husband's gross income was utilized along with his disability income, there is nothing in the record that would suggest that she would have taken anything less than that.

Can the Court now punish the wife for accepting the formula amount at face value? Even if the Court is to believe the husband that he does not understand the difference between "gross" and "net" income, which the Court finds doubtful, that there was no intent to defraud, and that he really received advice from an outside source about the excludability of the disability income, this case still calls for a recalculation of support. This was not an agreement "hammered out" by the parties in their living room, but was rather an agreement facilitated by a court-approved mediator using a formula, and as such, the $1800 figure ultimately reached had an official imprimatur. The husband made certain mistakes about the features of his income, the mediator accepted those mistakes, and the wife, who had every right to rely on those mistakes, became mistaken herself. Wife's motion to set aside the parties' agreement on the basis of mutual mistake of fact is granted.

## Spousal Support

Having determined that the mediated agreement was the result of constructive fraud and a mutual mistake of fact, the Court must determine the amount of spousal support due to wife, *pendente lite*.

The Court, on the basis of the evidence presented, awards the wife $2535 spousal support, effective February 9, 2012, the date of notice of the request for support. Any arrearages of the husband shall be paid at the rate of $250 per month, beginning September 1, 2012, and continuing with monthly payments on the first of each subsequent, consecutive month until paid in full.

*Exclusive Use and Possession of Marital Residence*

Since both parties are currently living in the marital home, the husband must carry the burden of proving "reasonable apprehension of physical harm to that party by such party's family or household member as that term is defined in § 16.1-228" in order for the Court to "enter an order excluding that party's family or household member from the jointly owned or jointly rented family dwelling." *See* Va. Code § 20-103(B).

The husband has testified to his health issues and some threats that his wife has made, and the question is whether the wife's actions constitute "violence, force, or threat that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury" under § 16.1-228.

The testimony of the husband that the wife threatened to use a gun and to have someone come and "take him out" are clearly threats of a severe nature. Further, the husband alleged that the wife's actions have contributed to the husband's reported declining health, increased medications, and panic attacks. They have also added to his existing hypertension and diabetes, conditions that formed part of his military disability determination.

While the wife claims that the husband has also threatened her, the husband's testimony and Plaintiff's Exhibit # 2, showing the state of the house and the alleged "hoarding" of the wife, support the view that the husband has met the requirements of § 20-103(B) and § 16.1-228. The continued presence of the wife, her habits, and her threats are placing undue stress and contributing to the physical deterioration the 53 year-old husband.

Unlike the scenario presented to the Honorable V. Thomas Forehand, a judge of this Court, that resulted in the Complaint for Divorce being dismissed on January 26, 2012, it is clear that there now exists a mounting and palpable animosity between the parties that is having an effect on the husband's health. Therefore, the Court grants exclusive use and possession of the house to the husband.

The wife shall have thirty days from the date of entry of the Order to vacate the marital home. She will be able to take her separate property with her, and the Court hopes that the parties, now having counsel, can agree to divide the home's furnishings among themselves, with such a split being valued and recorded for future purposes.