Present: Lemons, C.J., Goodwyn, Millette, Mims, Powell, and
Kelsey, JJ., and Koontz, S.J.

WILLIAM D. EVANS, IN HIS CAPACITY
AS TRUSTEE OF THE WANDA S. EVANS TRUST
                                        OPINION BY
v.  Record No. 141277    SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
                                        June 4, 2015
WAYNE L. EVANS, INDIVIDUALLY AND
AS THE PERSONAL REPRESENTATIVE OF
DOUGLAS E. EVANS, DECEASED, ET AL.

            FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
                    Keary R. Williams, Judge


    In this appeal, we consider as an issue of first

impression in Virginia whether one spouse with an ownership as

a tenant by the entirety in real property may, by his or her

sole act, convey that ownership to the other spouse to create

a fee simple estate in the grantee spouse.

                            BACKGROUND

    On November 26, 1973, Douglas E. Evans and Wanda S.

Evans, husband and wife, obtained title to a parcel of real

property known as 605 Fairway Drive in the Town of Bluefield

in Tazewell County (the "Fairway Drive property") as tenants

by the entirety with right of survivorship by way of a deed

from Ply Developing Corporation.  On December 27, 1976,

Douglas executed a general warranty deed (the "1976 deed")

that purported to convey to Wanda "all of his interest" in the

Fairway Drive property in exchange for both "love and

affection" and "ten dollars, cash-in-hand paid."  The 1976

deed identified Douglas as the sole grantor, naming Wanda only as the grantee.

For reasons not explained in the record, the 1976 deed was not recorded in the land records of Tazewell County in Deed Book 456, page 322 until April 11, 1979. Nor does the record provide direct evidence that prior to it being recorded, Wanda accepted physical delivery of the 1976 deed or that it was she who caused the deed to be recorded.

Douglas and Wanda had three sons, William D. Evans, Lloyd David Evans and Wayne Lewis Evans. Wayne has two children, Lisa Marie Evans and Jason Lloyd Evans. On February 2, 1993, Wanda executed a trust agreement creating a revocable inter vivos trust designated as the Wanda S. Evans Trust (the "trust").

Under the pertinent terms of the trust, upon Wanda's death the assets were to be distributed as follows:

- $25,000 each individually to her grandchildren Lisa and Jason, to be held in separate trusts by William until each grandchild reached the age of 30;

- A life estate to Douglas in the Fairway Drive property including household goods, if he survived Wanda at her death;

- The remainder of the trust assets, including the Fairway Drive property and the household goods, to William.

In the trust Wanda expressly made no provision for Wayne and Lloyd to receive any assets of the trust. The trust further

2

provided that William was to serve as an alternate successor trustee.  At all times relevant to the litigation in this appeal, William served in that capacity after Wanda's death and the death of the first named successor trustee.

Contemporaneous with the creation of the trust, Wanda executed a deed which purported to convey by general warranty "all of her interest in" the Fairway Drive property to herself as trustee of the trust (the "1993 deed").  The 1993 deed identifies the property as "being the same interest in real estate conveyed to [Wanda] by deed dated February 2, 1993 [sic], from Douglas E. Evans, which deed is of record in . . . Deed Book 456, page 322."[1]

Wanda died testate on April 18, 1994.  At the time of her death, she and Douglas were residing in the Fairway Drive property.  Under the terms of her will, which was executed the same day as the 1993 deed and the trust, any property remaining in her estate was to pour over into the trust. Consistent with the provisions of the trust, her will also purports to bequeath the Fairway Drive property to William subject to a life estate in Douglas.

---

[1] Although the 1993 deed misstates the record date of the 1976 deed, it correctly identifies that deed by its location in the land records.  Because the 1993 deed was not challenged on this discrepancy, we will treat it as a scrivener's error.

3

Following Wanda's death, title to the Fairway Drive property became a subject of dispute principally between Wayne and William. On April 17, 1995, Wayne, as next friend of Lisa and Jason, filed a declaratory judgment action in the Circuit Court of Tazewell County against Douglas, William and the executor of Wanda's estate. Therein, Wayne asserted that the trust failed on numerous grounds. As pertinent to this appeal, Wayne asserted that the 1993 deed was ineffective to transfer any interest in the Fairway Drive property to the trust because "neither spouse can sever an estate by the entireties or convey or dispose of any part of it . . . by his or her sole act." Implicit in this assertion was the further assertion that the 1976 deed was ineffective to convey Douglas' interest in the Fairway Drive property to Wanda by his sole act. Thus, Wayne contended that Wanda "had no separate estate or interest in" the Fairway Drive property which she could convey by deed to the trust or devise in her will.

On November 13, 1995, the circuit court ruled that "no actual controversy" existed between the parties and dismissed the complaint without prejudice. Thereafter, on November 30, 1995, Wayne, both as next friend of his children and individually, William, Douglas, and Wanda's executor entered into a mutual release and settlement agreement. As relevant

4

to this appeal, the parties to the settlement agreed that Douglas would be permitted to remain in the Fairway Drive property until his death and further was to receive a payment of $81,869.63 from Wanda's estate in "full satisfaction of his claims against the estate, whether under the Trust, the Will, his elective share or otherwise." Douglas expressly "waive[d] any right he may have to [the Fairway Drive property] except for his life interest." Douglas continued to live in the Fairway Drive property until his death on March 12, 2012.

On November 19, 2012, William, in his capacity as trustee of the trust, filed a declaratory judgment action against Wayne, both individually and as personal representative of Douglas' estate, Lloyd, Lisa and Jason in the circuit court seeking to quiet title in the Fairway Drive property. An amended complaint was filed on February 22, 2013. As alleged therein, Wayne and Lloyd asserted a claim of ownership in the Fairway Drive property through Douglas' estate, contending that title to the property had remained in Douglas and Wanda as tenants by the entirety at the time of Wanda's death and, thus, that it became Douglas' property in fee simple as the survivor.

Wayne and the other defendants (collectively, "Wayne") filed an answer in which they acknowledged the claim that the Fairway Drive property had remained as an estate by the

5

entirety in Douglas and Wanda.  This was so, they contended, because the 1976 deed was ineffective to divest Douglas of his interest since it was not executed both by Douglas and Wanda as grantors.

William and Wayne filed cross-motions for summary judgment, the respective positions of which parallel the arguments made in this appeal.  In summary, William maintained that the 1976 deed was effective because Douglas and Wanda "joined" in the deed as grantor and grantee.  He further maintained that even if the 1976 deed was technically deficient, the equitable doctrine of estoppel by deed should prevent Douglas' estate from seeking an interest in the property.  Finally he contended that the settlement agreement barred Douglas' estate from asserting that Douglas had any interest other than a life estate in the Fairway Drive property.

In response, Wayne maintained that the 1976 deed was ineffective because tenants by the entirety must join as grantors to convey any interest in the property, even if the conveyance is to one of them individually.  He further maintained estoppel by deed was inapplicable where the deed relied upon was void, and not merely technically deficient. Finally, Wayne denied that the settlement agreement was applicable to the Fairway Drive property because neither the

6

trust nor Wanda's estate ever had ownership of the property and, thus, the trust could not assert a claim of ownership based on Douglas' waiver of any interest he might have had in the property.

Following argument on the cross-motions, the circuit court issued an opinion letter dated October 10, 2013 in which it concluded that the 1976 deed failed to show the requisite intent to "jointly transfer[]" the Fairway Drive property to Wanda in fee simple and thus, because that deed was ineffective, the 1993 deed was likewise ineffective to transfer any interest to the trust.  The circuit court concluded that William could not rely upon the equitable doctrine of estoppel by deed "due to the invalidity of the 1976 conveyance."  The court entered an order dated December 17, 2013 sustaining Wayne's motion for summary judgment, but retaining jurisdiction over the case to consider a motion for reconsideration which had been filed by William on December 5, 2013.

In the motion for reconsideration, William, among other things, asked the circuit court to make an express ruling as to the effect of the November 30, 1995 settlement agreement. William asserted that the settlement agreement constituted a waiver of any claim that Douglas, and by extension his estate,

7

had on the Fairway Drive property, thus effectively validating the 1976 deed.

In a hearing on the motion for reconsideration, the circuit court acknowledged that it had not expressly addressed the effect of the settlement agreement, but that "it was implicitly addressed." Accordingly, the court ruled that its judgment did not violate the terms of the agreement. By a final order dated May 27, 2014, the court denied the motion for reconsideration and entered final judgment for Wayne. We awarded William this appeal.

DISCUSSION

William assigns error to the circuit court's rulings that the 1976 deed was ineffective and, therefore, failed to terminate Douglas' and Wanda's tenancy by the entirety in the Fairway Drive property. He further assigns error to the court's correlative rulings that neither estoppel by deed nor the terms of the settlement agreement barred Douglas' estate from asserting ownership of the Fairway Drive property.

We review questions regarding the validity and effect of deeds and other written legal documents de novo. See Ott v. L&J Holdings, LLC, 275 Va. 182, 187, 654 S.E.2d 902, 904 (2008). Because the dispositive issue in this case, as recognized by the circuit court and the parties, is whether the 1976 deed effectively terminated Douglas' tenancy by the

8

entirety ownership in the Fairway Drive property, leaving Wanda as the sole owner in fee simple, we begin our analysis with a review of our prior decisions regarding ownership of real property as tenants by the entirety.

Virginia is one of about two-dozen states that continue to recognize tenancies by the entirety. See Bunker v. Peyton, 312 F.3d 145, 151 (4th Cir. 2002). Tenancy by the entirety is a legal fiction "'based upon the same four unities that support joint tenancies [plus] a fifth unity . . . of marriage.'" Rogers v. Rogers, 257 Va. 323, 326, 512 S.E.2d 821, 822 (1999)(quoting Jones v. Conwell, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984)); see also Pitts v. United States, 242 Va. 254, 258-59, 408 S.E.2d 901, 903 (1991).

It is well established that specific consequences flow from the addition of this fifth unity. First, during the marriage, neither spouse may make an absolute disposition of property held as tenants by the entirety "by his or her sole act." Hausman v. Hausman, 233 Va. 1, 3, 353 S.E.2d 710, 711 (1987). Second, consistent with this restriction on alienability, no creditor of only one spouse can attach property held by both spouses as tenants by the entirety. Pitts, 242 Va. at 258-59, 408 S.E.2d at 903. Finally, so long as the property remains held by them as tenants by the entirety, upon the death of one spouse, ownership of the

9

property will pass to the other in fee simple outside the estate of the deceased spouse.  Vasilion v. Vasilion, 192 Va. 735, 740, 66 S.E.2d 599, 602 (1951).

While these principles have been applied in many cases extending to the earliest decisions of this Court, see, e.g., Thornton v. Thornton, 24 Va. (3 Rand.) 179 (1825), a careful review of these cases reveals that, unlike the current case, they primarily involved either a security interest of or a conveyance to a third party.  See, e.g., Hausman, 233 Va. at 3, 353 S.E.2d at 711 (1987)(refusing to prioritize lien on marital property granted by only one spouse); Waskey v. Thomas, 218 Va. 109, 113, 235 S.E.2d 346, 349 (1977)(granting rescission where grantee obtained deed signed by only one spouse).  Thus, the question whether a deed executed by one spouse purporting to convey his or her ownership in a property held by the entirety to the other spouse is one of first impression in Virginia.

Wayne contends that the circuit court correctly ruled that any conveyance of ownership in property held by the entirety must be joined by both spouses as grantors.  In support of this contention, he relies heavily on our decision in Vasilion.

In Vasilion, we considered whether a judgment creditor of the husband was entitled to rescission of a deed in which the

10

husband and wife jointly conveyed a property held by them as tenants by the entirety to the wife solely on the ground that the purpose of the deed was to put the property beyond the reach of the creditor. 192 Va. at 738, 66 S.E.2d at 601. Concluding that the trial court did not err in refusing to rescind the deed, we based our decision on the fact that the property could not have been attached by the creditor prior to the conveyance, because the debt was not a "joint debt[] of both spouses." Id. at 740, 66 S.E.2d at 602. In so doing, we noted that "husband and wife unquestionably can join in a deed conveying the entirety to a third party, and in Virginia[, Code § 55-9] permits a husband and wife to join in a deed conveying land to himself or herself." Id. Emphasizing the latter part of this statement, Wayne contends that property held by spouses as tenants by the entirety may only be conveyed to one of them when both join in the deed as grantors. We disagree.

First, we note that in Vasilion the validity of the deed to the wife would not have altered our holding that the judgment creditor could not have attached the property prior to the conveyance. Thus, while we held that the deed to the wife was effective because both spouses joined as grantors in the deed, this does not resolve the question whether both

11

spouses must join as grantors in a deed purporting to convey property held as tenants by the entirety solely to one spouse.

This case presents the first opportunity for the Court to resolve the issue whether under any circumstance one spouse (the "grantor-spouse") may effectively convey all of his or her ownership in property held in a tenancy by the entirety to the other spouse (the "grantee-spouse") who does not join in the deed as grantor.  While the best practice would still be for both spouses to join as grantors in a deed to one of them separately, for the reasons that follow we hold that where there is sufficient evidence of the intent of the grantor-spouse to make such a conveyance and, likewise, of voluntary acceptance of the conveyance by the grantee-spouse, the requirement of mutual consent in the conveyance is met.

In discussing the requisites for a valid deed, voluntary acceptance by the grantee is often discounted as a formality that is subsumed within the prerequisite delivery of the deed to the grantee.  As we observed long ago in Skipwith v. Cunningham, 35 Va. (8 Leigh) 271, 282 (1837), "the assent of the grantee is implied in all conveyances; first, because of the supposed benefit; secondly, because it is incongruous and absurd that when a conveyance is completely executed on the grantor's part, the estate should continue in him; thirdly, to prevent the uncertainty of the freehold."  Nonetheless, the

role of the grantee to a conveyance is not a passive one. "Delivery indeed to the grantee himself implies acceptance by him; but as such delivery is not always to him in person, the necessity of immediate acceptance is not implied in the necessity of a delivery."  Id. at 281.

"That act [of delivery of the deed] indeed cannot compel the grantee to take against his will, but it is, as to the grantor, a complete and consummate act before that will is declared, although it may be avoided by the dissent of the grantee.  No [person] indeed can be forced to take an estate against his will; but the law on the other hand presumes that every estate, given by will or otherwise, is beneficial to the party to whom it is given, until he renounces it."  Id. at 281.  The rule laid down in Skipwith nearly two centuries ago remains the law of the Commonwealth today.  See, e.g., Langman v. Alumni Ass'n of the Univ. of Va., 247 Va. 491, 500, 442 S.E.2d 669, 675 (1994)("Acceptance on the part of the grantee is implied, because the conveyance is presumed to be beneficial, unless the grantee refuses to accept the deed by some act of renunciation, dissent, disagreement, or disclaimer.").

This is not to say that in the case of tenants by the entirety that implied acceptance by the fact of a purported delivery will be sufficient to prove the validity of the deed,

13

for the consent of the grantee-spouse must be affirmative in order to satisfy the requirement of mutual consent. The grantee-spouse's acceptance must be affirmative in order to avoid any mischief that might result in the rare case where conversion of an entirety ownership to a fee simple ownership would not be beneficial to the grantee-spouse.[2] Accordingly, we turn to consider whether the record in this case establishes that Wanda affirmatively accepted the conveyance from Douglas under the 1976 deed and, thus, gave her consent to the dissolution of the tenancy by the entirety.

Douglas' unilateral execution of the 1976 deed plainly is sufficient to establish his intent to divest himself of his tenancy by the entirety ownership in the Fairway Drive property in favor of a fee simple ownership in Wanda. However, there is no evidence as to how, when or to whom the deed was delivered, nor can it be established from the record who caused the deed to be recorded in 1979. As of 1979, at

---

[2] For example, where the spouses are estranged, one spouse might attempt to be divested of an interest in property that was environmentally contaminated or otherwise undesirable by surreptitiously recording a deed purporting to convey a fee simple interest to a grantee-spouse. Such a deed would be ineffective, however, because there would be no evidence of mutual consent. Indeed, in such a case, even actual delivery of the deed to and acceptance by the grantee-spouse in person might not be sufficient if the evidence showed that the acceptance was made without knowledge of the undesirable nature of the property or other fraudulent purpose by the grantor-spouse.

best there was only an implied delivery to and acceptance of the deed by Wanda.

Nevertheless, Wanda's execution in 1993 of a deed, trust and will, which each addressed her ownership of the Fairway Drive property as her separate property, is clear evidence of her affirmative intent to accept the 1976 deed and thereby her consent to the dissolution of the tenancy by the entirety to create her fee simple ownership of the property.  The specific reference in the 1993 deed to the conveyance to her by the 1976 deed removes any doubt that Wanda could have believed she still was seized only of a tenancy by the entirety ownership in the property.  Based on the record in this particular case, there is sufficient evidence to establish the mutual consent of Douglas and Wanda to the conversion of their tenancy by the entirety ownership of the Fairway Drive property to the fee simple ownership in Wanda.  Thus, the circuit court erred in finding that the 1976 deed was not valid to accomplish its object.[3]  It then follows that the 1993 deed would likewise have been valid to transfer Wanda's fee simple interest to the trust.

---

[3] Our resolution of this issue in William's favor moots his further assignments of error challenging the circuit court's failure to apply the doctrine of estoppel by deed or to interpret the settlement agreement as waiving any claim by the estate to the Fairway Drive property.  Accordingly, we express no opinion on those issues.

CONCLUSION

For these reasons, we hold that the circuit court erred in finding that the 1976 deed was ineffective and void.  We will reverse the judgment of the court in favor of Wayne and enter final judgment for William confirming that the Fairway Drive property is the property of the trust, as is already reflected in the land records of Tazewell County.

<u>Reversed and final judgment</u>.


JUSTICE POWELL, with whom CHIEF JUSTICE LEMONS and JUSTICE MIMS join, concurring.

Although I agree with the outcome of this case, I cannot agree with the majority's rationale.  According to the majority, evidence of mutual consent is all that is necessary for one spouse to convey his interest in a tenancy by the entirety to the other spouse.  I disagree with the majority because, in my opinion, it ignores the fundamental nature of tenancies by the entirety, creates an incorrect standard for reviewing such conveyances, and unnecessarily creates an exception to longstanding principles of law that could potentially, as demonstrated by the facts at bar, create uncertainty as to ownership.

This Court has long recognized that "[n]either spouse can by separate act make an absolute disposition of property they

16

hold as tenants by the entirety." Rogers v. Rogers, 257 Va. 323, 326, 512 S.E.2d 821, 822 (1999) (quoting Jones v. Conwell, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984)). This is because tenancies by the entirety are based on the legal fiction that husband and wife are one entity. Id. As husband and wife are one, "neither [spouse] has an interest [in the property] which can be conveyed." Vasilion v. Vasilion, 192 Va. 735, 742, 66 S.E.2d 599, 603 (1951). Indeed, it is the very fact that neither spouse has an individual interest in the property that protects the tenancy by the entirety from judgments against only one spouse. Id. at 742-43, 66 S.E.2d at 603-04.

Notably, in the 1976 deed, Douglas purported to convey "all of his interest" in the Fairway Drive property. If Douglas, as an individual, held any interest in the Fairway Drive property which he could unilaterally convey, that interest would be reachable by any of Douglas' creditors. Clearly, that is not the case because, as previously noted, Douglas' interest in the Fairway Drive property amounts to no interest at all. Thus, it is clear that Wanda and Douglas, jointly as husband and wife, held all of the interest in the Fairway Drive property.

Notwithstanding the fact that Douglas had no individual interest in the Fairway Drive property, "it is settled beyond

17

debate that . . . tenants by the entirety [have] no power to alienate permanently their interest, unless they act[] together." Jones, 227 Va. at 182, 314 S.E.2d at 65 (emphasis added). See also Vasilion, 192 Va. at 740, 66 S.E.2d at 602 ("When an estate by the entireties is once set up, neither spouse can sever it by his or her sole act."). Given that Douglas and Wanda's actions in the present case occurred over 16 years apart, it can hardly be said that they acted together. Indeed, there is no evidence in the record that Wanda was even aware of Douglas' unilateral actions until she executed the 1993 deed.

Further, the majority fails to explain the state of the property between the time it is conveyed by one spouse and the time such conveyance is accepted by the other. I recognize that this may be of little consequence in a case where the conveyance and acceptance occur simultaneously, but a coherent doctrine must also account for cases like the present, where the gap between unilateral conveyance and affirmative acceptance is measured in years. When does the tenancy by the entirety actually terminate: on the date of the initial conveyance, on the date the deed is recorded, or on the date it is affirmatively accepted? I recognize that such questions may have little bearing on the present case, but they will likely have significant ramifications in other areas of the

law (e.g., tax, bankruptcy, etc.). Furthermore, although the majority addresses the need for an affirmative acceptance to avoid the potential mischief a surreptitious conveyance could cause, it fails to address the reverse situation, where the grantee-spouse withholds affirmative acceptance to the detriment of the grantor-spouse.

I also take issue with the majority's reliance on Wanda's acceptance of Douglas' unilateral conveyance to demonstrate the parties "mutual consent." Mutual consent, without more, has never been recognized as a valid means for terminating a tenancy by the entirety. Indeed, the phrase "mutual consent" has never once been mentioned in our entire jurisprudence on tenancies by the entirety.

It has been established law in this Commonwealth since 1825 that terminating a tenancy by the entirety requires "a joint conveyance of the property." Vasilion, 192 Va. at 740, 66 S.E.2d at 602 (citing 2 Raleigh C. Minor, The Law of Real Property, § 854 (1908)). See also Thornton v. Thornton, 24 Va. (3 Rand.) 179, 183 (1825). This is true regardless of whether the property is being conveyed to one spouse or to a third party. While such an approach may appear to put form over substance, in reality, it avoids all of the pitfalls discussed above. Both parties, along with any affected third parties, will immediately know the state of the property

19

ownership; there can be no gamesmanship in the form of surreptitious conveyances or withheld acceptances; and the "mutual consent" of both spouses is readily apparent in the joint conveyance.

Rather than relying on a strained interpretation of the alleged 1976 conveyance from Douglas to Wanda, I would reverse the judgment of the trial court based on the terms of the November 30, 1995 settlement agreement (the "Settlement Agreement").  At the time Douglas entered into the Settlement Agreement, Wanda had already passed away.  Therefore, Douglas was the sole owner of the property because the tenancy by the entirety had terminated with Wanda's death.  At that point, he was free to alienate his interest in the property, which he did in the Settlement Agreement, with the exception of a life interest.  In exchange, he received $81,869.63 in consideration.  As Douglas only retained a life estate, he had no interest to pass on to his heirs.  Accordingly, I concur with the majority that a judgment confirming that the Fairway Drive property is the property of the trust should have been entered for William.